J-S30017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| T. P. O/B/O A.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| G. P. | : | No. 855 EDA 2023 |

Appeal from the Order Entered March 1, 2023
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CV-2023-080103

BEFORE: BENDER, P.J.E., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, J.: **FILED SEPTEMBER 27, 2023**

T.P.[1] (Mother) appeals from the order, entered in the Court of Common Pleas of Delaware County, dismissing, with prejudice, her petition for a final protection from abuse (PFA) order against G.P. (Father),[2] with regard to herself and the parties' minor child, A.P. (born 03/12), and vacating a temporary PFA order. After careful review, we affirm on the well-written opinion authored by the Honorable Stephanie H. Klein.

---

[1] Mother was married during the pendency of this matter. Her initials are now T.D.

[2] Father has not filed a brief on appeal.

Mother and Father are the parents of A.P., and his older sister, S.P. (collectively, Children); they share legal and physical custody of Children.[3] Mother and Father were separated at the time of the instant matter.[4]

On January 13, 2023, Mother filed a petition for a PFA order against Father, on behalf of A.P., with regard to an incident that took place on December 19, 2022, at Father's home. In the petition, Mother alleged that "[p]er [a] prior PFA [order[5]] protecting [S.P., Father] is not to administer corporal punishment [to Children]." PFA Petition, 1/13/23, at 6. Mother's petition avers that on December 19, 2022, while A.P. was on the phone with her, Father forcibly came in[to] A.P.'s room [and] forcibly took [his] phone,

_____

[3] On November 6, 2019, the Honorable William C. Mackrides entered a custody order awarding Mother and Father shared legal and physical custody on a two-week rotating schedule during the school year—Week 1: Father custody from Monday afternoon through Wednesday morning; Mother custody Wednesday afternoon though Friday morning; Week 2: Mother custody Monday afternoon through Wednesday morning and Father custody Wednesday afternoon through Friday morning. During the summer months, Mother had custody in odd years for the first two weeks of the summer and Father had custody during even years for the first two weeks of summer. Thereafter, the parties alternated custody every two weeks.

[4] Mother filed a petition for a temporary PFA against Father, on behalf of A.P., on January 5, 2023. Following an *ex parte* hearing, the court entered a temporary PFA order against Father with regard to A.P. However, on January 12, 2023, the court vacated the temporary PFA order after Mother failed to appear for a final PFA hearing due to a "miscommunication with the [c]ourt regarding the date [of the hearing]." N.T. Temporary PFA Hearing, 1/13/23, at 4.

[5] Father has a pending appeal with regard to this final PFA order entered on behalf of S.P. *See* 320 EDA 2023.

held it over A.P.'s head, [and then, as A.P. was] screaming[, Father] hurt [his] arm." *Id.* Mother further alleged that Father "grabbed/shoved A[.]P[.] by the arm[, and as A.P. jumped up in an attempt to reach his phone, . . . he sustained] a mark on his arm [that left the arm] red/hurt." *Id.* at 6. When Father finally gave A.P. his phone back, A.P. called Mother. Mother recorded that conversation, which the trial court played a portion of at a final PFA hearing.

When A.P. returned to Mother on December 21, 2022, she took A.P. to a pediatrician who instructed Mother to take A.P. to the Children's Hospital of Philadelphia (CHOP) to have the injury examined and documented. At CHOP, a team of doctors examined A.P., taking photographs of and documenting a bruise on his arm. The Delaware County Department of Human Services, Office of Children and Youth (CYS) was called to CHOP to further investigate the matter.

On December 23, 2022, A.P. was admitted to Bryn Mawr Hospital (BMH) due to medical issues unrelated to the PFA incident (vomiting and dehydration). While being treated at the BMH, a nurse observed the bruising on A.P.'s arm, although the BMH emergency room doctor's history and physical examination notes make no mention of bruising or anything indicated under the section "skin," other than pallor. Main Line Health  E&P Notes, 12/23/22, at 19-20, 22. Child was discharged from BMH on December 24, 2022, with a diagnosis of "viral gastroenteritis." Main Line Health Discharge

Summary Notes, 12/24/222, at 17. Father had custody of A.P. from noon on December 25, 2022 to December 27, 2022.

CYS received a report of Father's suspected child abuse associated with the December 19, 2022 incident, and opened an investigation into the matter. *See* CYS Letter to Mother, 12/30/22. As part of the investigation, a forensic interviewer interviewed A.P. at the Delaware County Child Advocacy Center on February 10, 2023. During the interview, A.P. gave three different accounts of how he sustained the bruise on his arm. Following the investigation, the complaint was deemed unfounded. *See* CYS Letter, 2/16/23.

On January 13, 2023, the court held an *ex parte* hearing on Mother's petition. *See* 23 Pa.C.S.A. § 6107(b). At the conclusion of the hearing, the court entered a temporary PFA order in favor of A.P. with regard to Father. The order prohibited Father from "abus[ing], harass[ing], stalk[ing], threaten[ing], or attempt[ing] to threaten to use physical force against" A.P. Temporary PFA Order, 1/13/23, at 13. The temporary PFA order also superseded any prior custody order or PFA against Father, mandated no contact between Father and A.P., and directed Father to relinquish any firearm, weapon or ammunition in his possession to law enforcement. *Id.* at 14. Finally, pending the outcome of the final PFA hearing, Mother was awarded temporary custody of Children. *Id.*

After several continuances, the court held a final PFA hearing on February 23, 2023. Ms. Dominique Smith, a CHOP social worker, Ms. Megan

Maguire, a nurse at BMH, Ms. Nicole Strofe, a CYS casework supervisor, V.P. (Paternal Aunt),[6] Jorge Monroy Garcia,[7] Mother, and Father testified at the hearing. During the hearing, the court permitted Mother to play an audio recording taken during the incident; the court also allowed Father to play three video recordings of events that occurred evening.

At the conclusion of the hearing, the court took the matter under advisement, keeping the record open until February 27, 2023, in order to allow the parties to file thumb drives of audio and video recordings of the incident. On February 28, 2023, the court closed the record after Father's counsel filed a thumb drive of the video recording and Mother's counsel notified the court she did not intend to file a thumb drive of the audio recording.[8]

On March 1, 2023, the court dismissed Mother's petition for a final PFA order, with prejudice, and vacated its temporary PFA order in the matter, concluding Mother "failed to prove by a preponderance of the evidence that

---

[6] V.P. testified as to A.P.'s demeanor and the way he interacted with Father during an extended family video chat on Christmas Day, six days after the alleged incident.

[7] Mr. Garcia is Father's neighbor and has a daughter in A.P.'s elementary school class. Mr. Garcia would often take A.P. to school when Father's schedule did not permit him to do so. In fact, Father dropped A.P. off at Mr. Garcia's home on the mornings of December 20, 2023—the morning following the incident—and December 21, 2023, and Mr. Garcia drove him to school on those dates. N.T. Final PFA Hearing, 12/22/22, at 231-33.

[8] Mother's audio recording was not introduced as an exhibit or made part of the certified record on appeal.

[Father]'s acts, as alleged by [Mother], constituted 'abuse' within the meaning of 23 Pa.C.S.A. §[§] 6102(a)(1), (2)[,] or (5)." Trial Court's Additional Findings, 3/1/23. The court stated:

> In considering the parties' testimonies, the trial court found that Father's and [A.P.]'s accounts of the December 19th incident were very similar and therefore found both credible. Both testified that [A.P.] had refused to go to bed after several requests by Father when he wished to remain on the phone with Mother. [A.P.] was using his headphones to speak with Mother, and the phone was on [A.P.]'s desk. After [A.P.] ignored Father's last request at 9:45 p.m. on a school night to terminate the call and go to bed, Father took the phone from [A.P.]'s desk and hung up the call.
>
> The credible evidence further showed that [A.P.] then started screaming and followed Father into the living room to regain possession of the phone. Father held the phone over his head while [A.P.], much shorter [than Father], tried to jump up and snatch the phone back from Father. During this ten second interaction, [A.P.] claimed that Father pushed [A.P.]'s arm away, causing the bruise. Father credibly contended that he was not sure how [A.P.] was bruised. The court discounted Mother's recounting of this event to both Ms. Smith and Ms. Maguire, when she contended that Father and [A.P.] "struggled" over the phone as she failed to witness the event visually.[9]

Trial Court Opinion, 5/4/23, at 13.[10]

---

[9] In that same vein, the court discounted both Ms. Smith's testimony that Father "grabbed the phone away from" A.P., and Ms. Maguire's testimony that A.P. sustained "bruise**s**" where A.P., himself, testified Father took the phone off of his desk and that he sustained only one bruise after the incident.

[10] On May 4, 2023, the court ordered that the parties' witness lists, exhibits, and stipulations of fact be made a part of the record and attached them to the order.

Mother filed a timely notice of appeal raising[11] the following issues:

(1)     Did the trial court commit an error of law and/or an abuse of discretion when it found that there was no violation of 23 Pa.[]C.S.A. § 6102(a)(1)?

(2)     Did the trial court commit an error of law and/or an abuse of discretion when it found that there was no violation of 23 Pa.[]C.S.A. § 6102(a)(2)?

(3)     Did the trial court commit an error of law and/or an abuse of discretion when it found that there was no violation of 23 Pa.[]C.S.A. § 6102(a)(5)?

Appellant's Brief, at 2, 9, 17.[12]

Our standard of review for an order denying PFA relief is as follows:

[T]his Court reviews the trial court's legal conclusions for an error of law or an abuse of discretion.  A trial court does not abuse its discretion for a mere error of judgment; rather, an abuse of discretion occurs where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that

_____

[11] Although Mother failed to file a contemporaneous Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, *see* Pa.R.A.P. 1925(a)(2)(i), the court granted her an extension within which to file her statement.  Mother timely complied and filed the statement by the extended date.  Notably, the statement identifies 46 alleged errors committed by the trial court.  ***See*** Pa.R.A.P. 1925(b), 4/3/23, at 1-10.

[12] Mother's brief includes 34 sub-issues.  ***See*** Appellant's Brief, at 3-17.  As the trial judge acknowledges in her Rule 1925(a) opinion, "[m]any of [Mother's] matters are redundant, are subsumed by other issues[,] and many are difficult to understand.  Some fail to offer a basis of reversing the trial court's decision."  Trial Court Opinion, 5/4/23, at 18.  In fact, the trial court asks this Court to "find that many of these matters should be deemed waived and not be considered [on appeal]."  ***Id.***  Mother, on the other hand, argues in her brief that "each of the enumerated issues [contained in her Rule 1925(b) statement] was one that Mother wished to appeal [and that] each of the issues fit[s] within a few clear categories, and[,] thus[, her c]oncise [s]tatement was not too vague or confusing for the trial court to draft an opinion."  Appellant's Brief, at 30.

the action is a result of partiality, prejudice, bias, or ill will. . . . Finally, we review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevailed before the PFA court.

***Kaur v. Singh***, 259 A.3d 505, 509 (Pa. Super. 2021) (internal citations and quotations omitted). Moreover, a PFA petitioner must establish that the abuse occurred by a preponderance of the evidence, which this Court has defined as "the greater weight of the evidence, i.e., [enough] to tip a scale slightly." ***E.K. v. J.R.A.***, 237 A.3d 509, 519 (Pa. Super. 2020) (internal citations and quotations omitted, brackets in original). Finally, on appeal, "this Court will defer to the credibility determinations of the trial court as to witnesses who appeared before it." ***Karch v. Karch***, 885 A.2d 535, 537 (Pa. Super. 2005).

The purpose of the PFA Act (Act) is "to protect victims of domestic violence from those who perpetrate such abuse [and] its primary goal is advanced prevention of physical and sexual abuse." ***Lawrence v. Boardner***, 907 A.2d 1109, 1112 (Pa. Super. 2006) (citation and internal quotation marks omitted). The Act defines abuse, in part, as "[a]ttempting to cause or intentionally, knowingly[,] or recklessly causing bodily injury [or] serious bodily injury[; p]lacing another in reasonable fear of imminent serious bodily injury[;] or [k]nowingly engaging in a course of conduct or repeatedly committing acts toward another person . . . under circumstances which place the person in reasonable fear of bodily injury[.]" 23 Pa.C.S.A. §§ 6102(a)(1), (2), (5).[13] Because the Act does not define "bodily injury," courts use the

- 8 -

Crimes Code's definition of bodily injury—"impairment of physical condition or substantial pain"—when analyzing the term in a PFA Act matter. *See* 23 Pa.C.S.A. § 6102(b); *see also* 18 Pa.C.S.A. § 2301.

Mother first contends that she proved, by a preponderance of the evidence, that Father recklessly caused bodily injury to A.P. where Father "left painful, red marks on [A.P.] as a result of the December 19, 2022 incident, which red marks turned into a bruise that was painful to the touch." Appellant's Brief, at 33. Mother further argues that photographs and testimony from A.P., Mother, Father, a nurse, and social worker substantiate that the bruising surfaced "in the same place where [A.P.] complained of red marks to [M]other immediately after Father 'pushed his arm' when [A.P.] was trying to get his phone back." *Id.* Finally, Mother claims that the trial court abused its discretion by disregarding the severity of A.P.'s bruise and by "disallowing" some testimony as "cumulative" where that testimony would have served to prove the severity of A.P.'s bruise. *Id.* at 34.

Here, the court found that, at worst, A.P.'s bruising was caused accidentally. The court chose to credit Father's testimony that he did not know how A.P. sustained the bruise and discount Mother's story that "Father and [A.P.] 'struggled' over the phone." Contrary to Mother's contention that the court "ignored evidence that Father grabbed Child's arm and pushed him," the court heard witness testimony, including that of A.P., and watched video and audio recordings of part of the events of the evening. We find that the evidence of record supports the court's conclusion that Father did not

intentionally, knowingly, or recklessly cause bodily injury to A.P., especially where Mother did not personally witness the event. ***See*** 23 Pa.C.S.A. § 6102(a)(1).

We also agree with the trial court that A.P.'s arm bruise did not constitute "bodily injury," as defined under the PFA, for purposes of proving abuse under subsection 6102(a)(1). While bruises may constitute bodily injury under the PFA in certain circumstances, those cases involve situations where the victim's injuries were still visible at the date of the PFA hearing, or where there was testimony that the perpetrator aggressively grabbed the arm of the victim and pushed her against the wall to cause the bruising. ***See In re M.H.***, 758 A.2d 1249, 1252 (Pa. Super. 2000); ***Carey v. Thompson***, 279 A.3d 1267 (Pa. Super. filed May 20, 2022) (unpublished memorandum).[14] ***See also Commonwealth v. Felder***, 176 A.3d 331 (Pa. Super. 2017) (twisting victim's fingers until they became numb, painful, and swollen rose to level of bodily injury and constituted abuse under PFA).

At the final PFA hearing, A.P. told the trial judge that while he was staying with Father on December 19, 2022, Father "pushed [his] arm" as he jumped up to grab his phone that Father was holding over his head. N.T. Final PFA Hearing, 2/23/22, at 45, 49. ***See also id.*** at 52-53 (A.P. telling trial judge bruise from incident with Father was on right arm, was flat, oval-

---

[14] ***See*** Pa.R.A.P. 126(b) (non-precedential decisions filed after May 1, 2019, may be cited for persuasive value).

- 10 -

shaped, an inch-long, and hurt when he touched it). CHOP's Emergency Department notes from December 21, 2022, indicate that A.P. "denied pain," reported that Father "pushed [him] on the arm" during an incident two days prior, and noted that A.P. had a "normal" activity level." CHOP Emergency Department Provider Notes, 12/21/22, at 1. While those same notes do indicate that there was a "small circular bruise on [A.P.'s] right forearm with tenderness to palpation," *id.* at 2, the CHOP provider indicated that there is "[n]o concern for fracture [and] no x[-]rays [were] indicated at this time." *Id.* Following examination, the CHOP doctor also noted clinically there was "[s]uspected child physical abuse," but cleared A.P. to be discharged to home. *Id.* at 3. Under such circumstances, we do not find that the trial court abused its discretion by concluding that A.P.'s bruise did not constitute "bodily injury" under the Act, where it neither impaired his physical condition nor caused him substantial pain. *See Commonwealth v. Davidson*, 177 A.3d 955, 958-59 (Pa. Super. 2018) (whether individual suffers pain or impairment is determination within purview of finder-of-fact).

We rely upon the trial court's 75-page opinion to dispose of Mother's remaining issues and sub-issues on appeal. *See* Trial Court Opinion, 5/4/23, at 14-75 (court finding: Father exercised reasonable parental authority during December 19, 2022 incident; any physicality between Father and A.P. was, at most, accidental; A.P.'s fear of Father not reasonable under circumstances; and, Father's past act of corporal punishment and instances of taking A.P.'s phone away for failure to follow Father's rules did not prove "course of

conduct" under PFA Act). We direct the parties to attach a copy of Judge

Klein's decision in the event of further proceedings in the matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2023

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**FAMILY AND JUVENILE**

T██████ P█████,                           :        **SUPERIOR COURT No.: 855 EDA 2023**
o/b/o minor child, A.P.,                    :
    Appellant                       :
                                    :
    v.                              :
                                    :
G█████ P█████,                             :        **No. CV-2023-080103**
    Appellee                        :

Lauren Kane, Esquire, Attorney for Plaintiff-Appellant
W. Frank Johnson, Attorney for Defendant-Appellee

## OPINION

KLEIN, J.                                                        Filed: May 4, 2023

### I.    PRELIMINARY STATEMENT

T██████ P█████ (hereinafter "Mother" or "Appellant"), on behalf of A██████ P█████ (hereinafter "child" or "minor child"), appeals the trial court's Order, entered on March 1, 2023, denying and dismissing her Petition for a Final Protection from Abuse ("PFA") Order with prejudice and vacating the Temporary PFA Order. Mother cites forty-six bases for her appeal which shall be addressed below.

### II.    PROCEDURAL HISTORY

On January 13, 2023, Mother commenced this matter by filing a Petition for a PFA Order against G█████ P█████ (hereinafter "Father" or "Appellee") on behalf of child, age 10. In the PFA Petition, Mother alleged that on December 19, 2022, child was on the phone with Mother when Father came into child's bedroom and "forcibly took [the] phone." Temporary PFA

1

Petition, 1/13/23 at 6. Further, she claimed that in the process of removing the phone from child, Father grabbed and pushed his arm, leaving bruises. *Id.* at 7.[1]

On January 13, 2023, after an *ex parte* hearing pursuant to 23 Pa.C.S. § 6107(b), the Honorable Deborah Krull issued a Temporary PFA Order for Mother on behalf of child. Father was precluded from contacting Mother or child, and Mother also was awarded temporary custody of child. Temporary PFA Order, 1/13/23 at 13-14. Further, the court ordered that "[Father] shall not abuse, harass, stalk, threaten, or attempt or threaten to use physical force against [child] in any place where they might be found." *Id.* at 13. The parties' final PFA hearing was scheduled for January 19, 2023. *Id.* at 1.

The final PFA hearing was continued twice. On January 19, 2023, the matter was continued until February 16, 2023 due to a pending Delaware County Children and Youth Services ("CYS") investigation and police investigation. Continued Temporary Order, 1/19/23.

After a conference between parties' counsel and the court on February 16, 2023, counsel advised the court that they anticipated an extended hearing. Pre-Hearing Order, 2/17/23 at 1. Therefore, the court continued the final PFA hearing to February 23, 2023, specifically to be heard by the Honorable Stephanie Klein. Continued Temporary Order, 2/16/23.

On February 17, 2023, in order to facilitate an expeditious and efficient hearing, the court ordered parties to exchange witness information and exhibits, attempt to stipulate to facts to be presented at the hearing and submit either written or oral motions *in limine* before the hearing. Pre-Hearing Order, 2/17/23 at 1-2.

On February 23, 2023, the court convened the hearing for Mother's Petition for a Final PFA Order on behalf of child. The court heard testimony from many witnesses: Mother, Father,

---

[1] The court refers to the handwritten page immediately following the paginated sixth page of the Temporary PFA Petition.

2

child, Ms. Dominique Smith, a social worker at Children's Hospital of Philadelphia ("CHOP"), Ms. Megan Maguire, a nurse at Bryn Mawr Hospital, Ms. Nicole Strofe, a Delaware County CYS case worker supervisor, Ms. V██████ P█████, Father's sister, and Mr. J████ M██████-G█████, Father's neighbor. At the conclusion of the hearing, the court took the matter under advisement.

Following the hearing, on February 24, 2023, the court ordered that child's testimony be placed under seal so it could only be accessed by the court and parties' counsel. Additionally, on February 24, 2023, the court ordered that the record be kept open until February 27th to allow both parties' counsel to file thumb drives of Mother's audio recording and Father's video recordings, both presented at the February 23, 2023 hearing. On February 28, 2023, the court closed the record after Father's counsel filed the thumb drive and Mother's counsel notified chambers that she did not intend to file a thumb drive of the audio recording.

On March 1, 2023, the court denied and dismissed Mother's Petition for a Final PFA Order on behalf of child with prejudice and vacated the Temporary PFA Order. Order to Dismiss Petition, 3/1/23. The court filed Additional Findings to Denial of Final PFA Order ("Additional Findings"), which stated that "[Mother] failed to prove by a preponderance of the evidence that [Father]'s acts, as alleged by [Mother], constituted 'abuse' within the meaning of 23 Pa.C.S. § 6102(a)(1), (2) or (5)." Additional Findings, 3/1/23.

Mother filed her Notice of Appeal on March 28, 2023. Within the Notice of Appeal, Mother properly identified the appeal as a children's fast track appeal but failed to file her Concise Statement of Errors Complained of on Appeal, which must be filed simultaneously with the notice of appeal in a fast track appeal. Pa.R.A.P. 1925(a)(2)(i). On March 30, 2023, the trial court ordered Mother to file her Concise Statement of Errors Complained of on Appeal by April 3, 2023. Mother filed her Statement of Matters Complained of On Appeal Pursuant to Pa.R.C.P.

3

1925(b)[2] ("Concise Statement") on April 3rd. She raised forty-six issues on appeal which shall be addressed below.

On April 10, 2023, upon review of Mother's thirty-third issue on appeal, the trial court reviewed the transcript and asked her staff to listen to the recording of the hearing. Concurring with Mother's claim that a small part of the transcript on page 167 had not been transcribed, the court ordered the Electronic Recording Center at the Delaware County Courthouse to amend the transcript of the February 23rd hearing to include the transcription of Mother's recording on page 167. Order, 4/10/23. The Audio Visual Department complied, filing the amended record with the Office of Judicial Support on April 24, 2023, resolving the thirty-third issue in Mother's Concise Statement.[3]

Realizing that parties' pre-hearing list of witnesses, exhibits and stipulations of facts were inadvertently never made apart of the record in this instant matter, on May 3, 2023, the court ordered that the lists be made part of the record.

## III.  STATEMENT OF FACTS

On Monday, December 19, 2022, Father was exercising his physical custody of child; it was a school night. N.T., 2/23/23 at 134, 248. At 9:00 p.m., child and Mother were on the phone. *Id.* at 144-145. Mother estimated that this was their tenth or eleventh phone call of the day, which was customary. *Id.* at 57, 144-145.

At 9:00 p.m., during Mother's and child's phone call, Father began to remind child that 9:30 p.m. is bedtime, and he would have to end his phone call with Mother soon. *Id.* at 248, 255.

---

[2] The court notes that Mother mistakenly identified the Pennsylvania Rules of Civil Procedure instead of the Pennsylvania Rules of Appellate Procedure.

[3] The court notes that the amended record added approximately three pages to the record on page 167, thus, any citation in Mother's Concise Statement regarding the Notes of Testimony after page 167 is approximately three pages later in the amended transcript.

4

When child failed to terminate his call, at approximately 9:30 p.m., Father entered child's bedroom, videoing the interaction with his phone, and told child to conclude his call. *Id.* at 248. Child refused, wishing to continue speaking to Mother. *Id.* at 48, 248. Father corroborated his actions with a thirty-four second video. *See* Exhibit D-3.

Child confirmed that Father came into his bedroom multiple times, requesting that he hang up the phone and go to bed. N.T., 2/23/23 at 46-48. Child also agreed that his bedtime was 9:30 p.m. and that he failed to comply with Father's request. *Id.* at 46.

Father left and re-entered the room around 9:45 p.m., again videoing the interaction. *Id.* at 249. He repeated his request that child end the phone call. *Id.* Child was using his headphones to speak to Mother. He was sitting on a chair approximately five to seven feet from the phone, which lay on child's desk, located immediately to the right of the door after entry to the room. *Id.* at 249-250.

Still filming, Father reached out with his right hand and grabbed child's phone from the desk, turned around and walked out of the room. *Id.* at 250. However, while leaving the bedroom, Father accidentally terminated the video on his phone. N.T., 2/23/23 at 250-251; *see* Exhibit D-3.

Having accomplished his goal of ending the call, Father walked into the living room. N.T., 2/23/23 at 251. Child chased after him, hysterically screaming. N.T., 2/23/23 at 49-50, 251. Trying to retrieve the phone from Father, child began jumping, reaching for Father's hands and trying to grab the phone while Father held child's phone above his head, out of child's reach. *Id.* at 50, 252. After approximately ten seconds, Father decided to give child his phone back and relinquished it to child. *Id.* at 51, 252. Child then marched back to his room and, at the doorway,

5

yelled "[y]ou're an asshole" and slammed the door shut. *Id.* at 55, 252. Father's account was corroborated by a Blink video which primarily captured the event's audio.[4] *See* Exhibit D-3.

While child jumped up to attempt to retrieve the phone, child contended that Father pushed his arm. N.T., 2/23/23 at 45, 50, 51. He further claimed that Father's pushing resulted in a one to two inch oval shaped bruise on his arm. *Id.* at 51-53.

This injury, according to child, was hardly grievous. Child averred that the bruise began to hurt the following day but only when he touched it "a teensy bit." *Id.* at 53, 60. Additionally, child recounted that the bruise never swelled. *Id.* at 52.

The court queried child further, asking if Father pushed any other part of his body:

THE COURT: Well, when you say he pushed you you mean he pushed your arms away.
CHILD: Yes, so like this.
THE COURT: Okay. So he didn't push – lots of times unfortunately I hear these kinds of cases where people are unkind to each other. Lots of times when people tell me they're being pushed they're really pushing people's bodies. But he wasn't pushing your body. He was pushing your arms away.[5]
CHILD: Yes.

N.T., 2/23/23 at 59.

Child affirmed this testimony shortly after in further questioning by the court:

THE COURT: Well, let me – okay. So let me just be clear, [child], on – you know because we're talking about what happened that day right in the evening right before Christmas. So did dad essentially push your arm out of the way so you couldn't grab the phone. Right?
CHILD: Yeah.
THE COURT: Did he shove you in any other way? Did his –
CHILD: No.
THE COURT: Did his hands or any other part of his body touch your body at that time – just his hands on your right arm? Actually that's my left arm.
CHILD: Yes.

---

[4] The Blink camera is in the hallway outside of child's bedroom. Since the video is limited to the hallway, it primarily captured the audio of the event because Father and child leave the frame of the video. N.T., 2/23/23 at 260.
[5] The court misspoke here. There is no evidence of record that Father touched child's both arms, only one arm.

N.T., 2/23/23 at 65. Child only described the alleged abuse as Father pushing his arm. Child confirmed that no other physical interaction occurred between child and Father on that day.

Father denied that he purposefully hit, grabbed or shoved child, and asserted that he does not know how child obtained the bruise on his arm. *Id.* at 281. He admitted that child might have been inadvertently bruised:

> MR. JOHNSON: Let me just circle back to the evening of December 19, 2022. At any point in that evening did you put your hands on [child]?
> MR. P███████: No, never.
> MR. JOHNSON: Do you have any idea how [child] got his bruise?
> MR. P██████: I don't know. I assume when he was throwing his tantrum jumping up at me, arms moving. Could have accidentally hit him. But I didn't hit him. I didn't touch him.
> THE COURT: Okay. So let me just get this straight. You're assuming that jumping up – who accidentally – who could – you're speculating. Who could have accidentally hit whom?
> MR. P██████: Well, I possibly could have hit him as he's jumping up and I'm just trying kind of to turn the phone off. But I did not shove him. I did not grab him. I did not put my hand on him.

N.T., 2/23/23 at 281.

After Father decided to give child the phone back, child then called Mother back, within about one minute of the incident in the living room. *Id.* at 51, 147, 252. He was able to reach Mother through an emergency function on his phone, since Father had otherwise disabled the phone. *Id.* at 172.

Mother offered that child was screaming, crying and very upset. *Id.* at 161. Additionally, he told Mother that Father grabbed the phone and held it over his head so that he could not reach it. *Id.* at 167. Moreover, during Mother's and child's phone call, Father again asked child to go to bed, which can be heard in the background of the call.[6] *Id.*

---

[6] Although not introduced as an exhibit, Mother played a portion of the phone call to the court which is transcribed in the February 23, 2023 record. N.T., 2/23/23 at 167-170.

Mother then attempted to calm child down, telling child "[t]he only thing for you to do is to go brush your teeth, okay?" *Id.* at 169. Child immediately responded to Mother: "[t]he only thing for [Father] to do is just fuck off." *Id.*

The day after the incident, on December 20th, child had school. *Id.* at 231-232. Prior to attending school, Father dropped child at the house of his neighbor, J███ M████-G████, who lives three houses down the block. *Id.* at 229, 231. Mr. M████-G████ often watches child for about an hour before school so Father can leave for work. *Id.* at 233-234. Mr. M████-G████'s daughter, E., is in the same class as child, and he drives both to school when Father cannot. *Id.* at 229-230.

Mr. M████-G████ recounted that on the morning of December 20th, child behaved normally; he saw no difference in their interactions that day. *Id.* at 231. Specifically, he recalled that he discussed chess with child. *Id.* at 231, 235. Mr. M████-G████ also drove child to school on December 21st. *Id.* at 232. Again, Mr. M████-G████ stated on December 21st that child had acted as usual. *Id.* at 233.

On cross-examination, Mr. M████-G████ conceded that while he converses with child about many subjects, he steers clear of any topic pertaining to child's family. *Id.* at 236-237.

Subsequently, on the evening of December 21, 2022, Mother took child to the CHOP emergency room. *Id.* at 75. Mother, child's stepfather and child's older sister, S.P., accompanied child. *Id.* at 77. After examining child, the CHOP medical team referred child to Ms. Dominique Smith, a CHOP social worker.[7] *Id.* at 75-76. Mother and Ms. Smith both failed to explain why

---

[7] The record states that Ms. Smith's testimony about her duration of employment at CHOP was inaudible. N.T., 2/23/23 at 75.

8

child presented at the emergency room on that evening. Additionally, Delaware County CYS investigator Camille Sellers also arrived at CHOP on December 21st.[8] *Id.* at 77.

Both Ms. Smith and Ms. Sellers conducted a joint interview of child. *Id.* They interviewed child in the presence of his family for approximately forty minutes to an hour. *Id.* at 78. Subsequently, they interviewed child alone for approximately fifteen minutes. *Id.* at 78-79. Ms. Smith remarked that child was initially nervous but then became forthcoming about the incident on December 19th. *Id.* at 79-80.

She testified that child told her that Father "grabbed his arm and pushed him." *Id.* at 80. Ms. Smith added that she could see the bruise on child's arm. *Id.* However, Ms. Smith also stated that although child did not want to go back to Father's home, he did not express any fear of Father. *Id.* at 81-82. Further, she did not feel concerned about child's welfare. *Id.* at 82.

Again, on December 23, 2022, only two days after his ER visit to CHOP, child presented at the emergency room at Bryn Mawr Hospital and then was admitted to the Pediatric Unit for symptoms of vomiting. *Id.* at 93-94. He spent the night in the pediatric unit. *Id.* at 93-94, 176. Ms. Megan Maguire, a registered nurse at Bryn Mawr Hospital for fourteen years, testified at the hearing regarding her contact with child. *Id.* at 92-93.

Ms. Maguire stated that child was very anxious, timid and nervous. *Id.* at 94. She noticed "bruises" on his arm and queried child, who was reluctant but eventually disclosed that Father bruised him. *Id.*

Father tried to see child at Bryn Mawr Hospital on both December 23rd and December 24, 2022. *Id.* at 135, 302. When Father initially arrived, child stated to both Ms. Maguire and Father

---

[8] Mother spoke to the Domestic Abuse Project of Delaware County ("DAP") on the way to CHOP and reported the December 19th incident to them. N.T., 2/23/23 at 177. She testified that DAP reported the incident to Delaware County CYS as mandatory reporters. *Id.*

9

that he did not want to see him. *Id.* at 96-97. Upon Father's return on December 24th, hospital security was called, and Father was escorted away from child's room. *Id.* at 97, 305-306. It is unclear who called hospital security, as Ms. Maguire denied that she had called security. *Id.* at 97.

After child's discharge on December 24th, he returned to Father's home for Father's custodial time on December 25, 2022. *Id.* at 135, 270-271. Father described his evening with child as pleasant. Around 8:00 p.m., they participated in a family Skype call, as most of Father's family lives in Miami and Chicago. *Id.* at 274-276. During this call, the family engaged in a Secret Santa gift exchange. *Id.* at 274. Father recounted that child had fun participating in the exchange, introducing screenshots from the call evidencing child's laughter. *Id.* at 277-279; Exhibit P-5. He described how child sat on his lap, and they joked with each other, particularly by imitating each other's actions, which made child laugh hysterically. N.T., 2/23/23 at 278; *see* Exhibit P-5.

Ms. V⬛⬛⬛ P⬛⬛⬛, Father's sister and a participant in Father's family Skype call, testified briefly to corroborate that Father and child were acting fine and child had been laughing during the call. N.T., 2/23/23 at 244-245. She further stated that child showed no sign that he was fearful of Father. *Id.* at 245.

On December 26, 2022, Father relayed that they spent the day playing with his Christmas gift to child: an Oculus, a 3D virtual reality gaming system. *Id.* at 280. Child found it particularly funny when Father felt dizzy after playing the game. *Id.*

On December 27, 2022, as scheduled, child returned to Mother's custody. *Id.* at 135. Mother, child's older sister, S.P., and child then drove to Georgia, staying there until January 3,

10

2023 to attend Mother's wedding to Mr. S████ D████ on December 30, 2022. *Id.* at 130, 136, 271.

Upon child's return from Georgia on January 3, 2023, he returned to Father's custody. *Id.* at 280. Father described child's behavior as typical, stating that child watched YouTube and played Minecraft[9] or Adopt Me. *Id.* at 280-281. Child became ill on January 4, 2023 and returned to Mother's custody. *Id.* at 199-200.

A ChildLine complaint was filed as a result of the December 19th incident. CYS case worker supervisor Nicole Strofe supervised the investigation and witnessed remotely the February 10, 2023 forensic interview of child that had transpired at the Delaware County Child Advocacy Center. *Id.* at 108-110.

The protocol, in a forensic interview through the Delaware County Child Advocacy Center, requires that the child be interviewed solely by a forensic interviewer. *Id.* at 118, 119. CYS investigators and law enforcement monitor the interview remotely. *Id.* at 118.

Ms. Strofe relayed her impressions of child's interview to the court. *Id.* at 110. During the interview, child offered three different accounts to explain how he obtained the bruise on his right arm. *Id.* at 113. These differing accounts led Ms. Strofe to conclude that child failed to disclose a clear and concise statement of abuse and that the December 19th incident was not caused intentionally, recklessly or knowingly. *Id.* at 110. As a result, the CYS investigation was closed with an "unfounded finding." *Id.* at 109.

In his testimony, child expressed his general fear of Father because he had spanked him within the past year with both his hand and his belt. *Id.* at 54. Further, he stated that he does not want "to be with him." *Id.* at 46.

---

[9] The trial court notes that the record mistakenly identifies Minecraft as "Mindcraft." N.T., 2/23/23 at 277.

Both Mother and Father agreed that Father had administered corporal punishment to the child in the past. *Id.* at 184, 313-314. Although child stated that Father had hit him with a belt in the last year, Mother, the Petitioner, contradicted child, stating that Father has not used a belt to administer corporal punishment on child since 2021. *Id.* at 54, 184. Offering a slightly different narrative, Father claimed that he has refrained from employing corporal punishment against the child since early 2020. *Id.* at 314. However, Father testified that he has never used another object to spank the child, contradicting both child and Mother. *Id.* The court credited child's and Mother's testimony that Father has hit child with a belt.

After this court's decision to grant a Final PFA Order for six months to Mother on behalf of child's older sister, S.P., Father placed cameras in his home to document interactions with the children to defend himself in litigation filed by Mother.[10] *Id.* at 253. Moreover, he felt it was necessary to record children's phone calls with Mother as he believes that Mother also records all her phone conversations with child.[11] *Id.* at 287.

Child knew about Father's cameras, including one in his bedroom closet, which made him feel violated. *Id.* at 61-62. Child believes the cameras are only on sometimes, but he is not sure whether Father turns on the cameras selectively. *Id.* at 63-64.

Father admitted that he had a camera in child's closet, but he removed it late in the summer of 2022. *Id.* at 286-287. According to Father, the camera was placed in child's closet purely for audio purposes, and the camera was never enabled to record anything visually. *Id.* at 287.

---

[10] This trial court also adjudicated the Final PFA Order for Mother's and Father's other child, S.P., child's older sister. The trial court docket number is CV 2022-080576. On January 30, 2023, Father appealed the trial court's decision to grant S.P. a six month Final PFA Order. The Pennsylvania Superior Court docket number is 320 EDA 2023.

[11] Although it was not introduced as an exhibit, Mother did play a recording of a phone call with child at the hearing on February 23, 2023.

12

In considering the parties' testimonies, the trial court found that Father's and child's accounts of the December 19th incident were very similar and therefore found both credible. Both testified that child had refused to go to bed after several requests by Father when he wished to remain on the phone with Mother. Child was using his headphones to speak with Mother, and the phone was on child's desk. After child ignored Father's last request at 9:45 p.m. on a school night to terminate the call and go to bed, Father took the phone from child's desk and hung up the call.

The credible evidence further showed that Child then started screaming and followed Father into the living room to regain possession of the phone. Father held the phone over his head while child, much shorter, tried to jump up and snatch the phone back from Father. During this ten second interaction, child claimed that Father pushed child's arm away, causing the bruise. Father credibly contended that he was not sure how child was bruised. The court discounted Mother's recounting of this event to both Ms. Smith and Ms. Maguire, when she contended that Father and child "struggled" over the phone as she failed to witness the event visually.

Based on Father's and child's testimony, the court concluded that Mother failed to establish by a preponderance of the evidence that Father attempted to cause or intentionally, knowingly or recklessly caused bodily injury to child within the meaning of 23 Pa.C.S. § 6102(a)(1). At worst, child's bruising was accidental.

In addition, the court questioned whether this injury constituted "bodily injury" within the meaning of 23 Pa.C.S. § 6102(a)(1). Child's bruising was small. It was not raised. Moreover, child recounted that the bruise only hurt when he placed "a teensy bit" of pressure on it. Mother's Exhibit P-3, taken on December 23rd, the only photograph submitted, showed only one

13

small fading bruise on child's forearm. Accordingly, the court doubted whether such a small injury could constitute sufficient bodily injury to warrant a restraining order against Father.

Moreover, child's testimony failed to establish that Father placed him in reasonable fear of imminent serious bodily injury. *See* 23 Pa.C.S. § 6102(a)(2). Even crediting his testimony, the trial court was unable to understand how Father pushing child's arm away caused him to reasonably fear that Father would inflict serious imminent bodily injury on him.

Father's other actions that evening were reasonable and within the scope of a responsible parent. First, he requested that child go to bed several times because child had to get up early the next day for school. Second, Father removed the phone from child's desk without any physical contact after child ignored his requests. Last, child jumped up and down for ten seconds to retrieve the phone, Father relented and returned the phone to child. Mother confirmed that child called her back only a minute after the previous call was terminated. As a result, given Father's *de minimis* physical contact with child, the court found that he failed to act in any way that would cause "reasonable fear of serious imminent bodily injury" and denied Mother's petition on this basis.

Last, the record failed to establish by a preponderance of the evidence that Father knowingly engaged in a course of conduct or repeatedly committed acts towards child, including following the person, without proper authority, under circumstances which placed child in reasonable fear of bodily injury within the meaning of § 6102(a)(5). Mother alleged that Father's video cameras in his home constituted a course of conduct. However, the record failed to demonstrate how the cameras placed child in fear of bodily injury. On the contrary, it seems as if these video cameras protected child as well, as any inappropriate behavior by Father would be documented.

14

Her other argument, that Father's administration of corporal punishment by spanking, and on at least one occasion, by a belt constituted a course of action within the meaning of § 6102(a)(5), also failed. On December 19th, Father corrected child verbally for his refusal to go to bed on time on a school night. He then removed the phone from child's desk without any physical contact with child. Child then followed Father into the living where he kept the phone out of child's reach briefly while child jumped up to retrieve it. During child's jumping up, child contends that Father pushed his arm away, causing a minor bruise. After about ten seconds, Father returned the phone to child and child called Mother.

The court was unable to conclude from this record that child's interaction with Father that night caused child to reasonably fear bodily injury from Father, notwithstanding Father's distant, or not so distant, past administration of corporal punishment. Section 6102(a)(5) requires that the actor not only engage in a course of conduct, but also create a reasonable fear of bodily injury. For this reason, Mother's argument also lacked merit.

Mother's witnesses added little to help the court's determinations. Ms. Smith, the CHOP social worker, and Ms. Maguire, child's treating nurse from Bryn Mawr Hospital, encountered the child several days after the December 19th incident. As a result, they failed to witness the alleged incident of abuse. Notably, their accounts of the incident, as relayed to them by Mother and child, differed from those of Father and child.[12] Their observations of child established that child appeared anxious at the hospitals. Tellingly, neither testified that child was afraid of Father.

---

[12] Based on her interviews, Ms. Smith testified that Father "snatched the phone away from [child]," grabbed child's arm and pushed him. N.T., 2/23/23 at 80. This contradicts child's testimony that Father took the phone away while it was sitting on his desk and that Father pushed his arm. *Id.* at 45, 49. Ms. Maguire testified that she noticed bruises on child's arm, whereas child stated that he only sustained one bruise. *Id.* at 53, 59, 94; *see* Exhibit P-3. Based on these contradictions, the court discounted this part of Ms. Smith's and Ms. Maguire's testimony.

15

Mother also failed to observe Father's interactions with child on December 19th. She only offered testimony about her phone call with child shortly before and after the allegation of abuse. She played a recording of child's second phone call so that the trial court could hear that child was upset. However, the court failed to find that child's distressed demeanor alone failed to establish abuse; there was no dispute that child became upset when Father took his phone. That fact alone failed to establish that Father's actions constituted abuse under the Protection from Abuse Act, § 6102.

Father's additional witnesses rebutted Mother's testimony that child remained fearful of Father after December 19th. Both Father's sister, V██████ P██████, and Father's neighbor, Jorge M████y-G████, testified that child appeared normal. Ms. P████z witnessed child on December 25th, and Mr. M████-G████ drove the child to school on the December 20th and December 21st. However, as these witnesses failed to observe the December 19th incident, their testimonies also did not assist the court's determination.

Last, in her Concise Statement, Appellant takes great issue with the testimony of Ms. Strofe, the CYS worker. Ms. Strofe's explained that the Child Protective Services Act, 23 Pa.C.S. § 6301 et seq, establishes different legal standards than the Protection from Abuse Act, 23 Pa.C.S. § 6101 et seq. As a result, the court attached little weight to the CYS finding of "unfounded." In addition, while the court noted child's differing narratives at his forensic interview in February, almost two months after the incident, the court somewhat discounted the interview, finding that child, a ten year old, had already told this story many times and doubtless was nervous and confused at his interview. On the other hand, the court found child's account to the court credible and reasonable and so credited his testimony, particularly since it comported with that of Father's.

16

Based on all the evidence presented, the trial court found that Appellant T██████ P█████ failed to meet her burden, by a preponderance of the evidence, that Appellee G██████ P█████ abused child on December 19, 2022 pursuant to 23 Pa.C.S. §§ 6102(a)(1), (2) or (5) and denied Appellant's Petition for a Final PFA Order. The court dismissed her Petition and this appeal shortly followed.

## IV.   DISCUSSION

### A.  Many of Appellant's Issues Should Be Deemed Waived and Therefore Should Not Be Considered by the Appellate Court.

Preliminarily, the court notes that many of Appellant's Matters in her Concise Statement fail to comply with the Rules of Appellate Procedure. Pursuant to the trial court's Order of March 30, 2023, Appellant filed her Concise Statement on April 3rd and raised *forty-six (46)* issues. The number of issues raised in a concise statement alone does not provide a basis to deny appellate review. *Eiser v. Brown & Williamson Tobacco Corp.*, 938 A.2d 417, 427-28 (Pa. 2007). However, an appellant's failure to set forth issues raised in a concise manner can impede the trial court's ability to address the issues appellant seeks to raise on appeal. *Kanter v. Epstein*, 866 A.2d 394, 401 (Pa. Super. 2004). Therefore, this failure frustrates the Superior Court's ability to engage in meaningful and effective appellate review. *Id.*

Accordingly, in *Eiser*, the Pennsylvania Supreme Court found that the large numbers of issues raised were warranted. *Eiser*, 866 A.2d at 426-27. *Eiser* involved complex tort litigation against a tobacco company. *Id.* 422. In contrast, in *Kantor*, the litigants were not justified in raising an overwhelming number of issues in their straight-forward contractual dispute. *Id.* at 421-22 (citation omitted). Given the lack of complexity of the matter, it found that the *Kantor* litigants attempted to thwart the appellate process by cluttering the record with a multiplicity of

issues in their concise statement, while the *Eiser* litigants acted in good faith when raising a large number of issues in their concise statement. *Id.* at 427-48.

In sum, the *Eiser* holding "simply requires that lower courts undertake consideration of whether the circumstance of the lawsuit at issue suggest there is a lack of good faith involved." *Id.* at 427 n.16; *see Mahonski v. Engel*, 145 A.3d 175, 181 (Pa. Super. 2016) (eighty-seven issues raised for a conventional breach of contract claim that only required a two day trial was unreasonable); *see also Knaak v. Terpin*, 2020 WL 6538815 at *4 (Pa. Super. 2020) (wife failed to preserve her issues for appellate review and breached her duty of good faith and fair dealing when she raised forty-five issues on appeal in an equitable distribution case).

In the instant case, Appellant appears to have violated the rules of appellate procedure by raising a total of forty-six (46) separate issues that she claims arose in a final PFA hearing which failed to present any unique issues. Many of Appellant's matters are redundant, are subsumed by other issues and many are difficult to understand. Some fail to offer a basis for reversing the trial court's decision. Accordingly, the trial court requests the appellate court to find that many of these matters should be deemed waived and not be considered by the appellate court. *See* Pa.R.A.P. 1925(b)(4)(iv).

Nevertheless, the court shall address each of these forty-six issues to the best of its ability.

### B. Standard of Review

In considering a trial court's determination to grant a Final PFA, the Superior Court "reviews the trial court's legal conclusions for an error of law or an abuse of discretion." *Kaur v. Singh*, 259 A.3d 505, 509 (Pa. Super. 2021) (citing *Custer v. Cochran*, 933 A.2d 1050, 1053-54 (Pa. Super. 2007)) (en banc). The appellate court may find an abuse of discretion "where the

18

judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will." *Mescanti v. Mescanti*, 956 A.2d 1017, 1019 (Pa. Super. 2008) (citation omitted).

Moreover, in *S.G. v. R.G.*, 233 A.3d 903, 909 (Pa. Super. 2020) (quoting *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa. Super. 1998)), the Superior Court reiterated its function as the appellate court in a PFA case:

> When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it.

Additionally, in order to establish abuse pursuant to 23 Pa.C.S. § 6102(a), the plaintiff must meet her burden by a preponderance of the evidence. *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa. Super. 2020) (citation omitted). "A 'preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, [enough] to tip a scale slightly.'" *Id.* (quoting *Raker v. Raker*, 847 A.2d 720, 724 (Pa. Super. 2004)).

Last, in determining whether to grant a plaintiff's petition, the trial court must consider the purpose of the PFA Act: to protect victims of domestic violence from those who perpetuate such abuse, with the primary goal of advance prevention of physical and sexual abuse. *K.B. v. Tinsley*, 208 A.3d 123, 127 (Pa. Super. 2019) (quoting *Buchhalter v. Buchhalter*, 959 A.1260, 1262 (Pa. Super.2008) (other citations omitted)).

With that legal framework in mind, the trial court now turns to the issues raised in Appellant's Concise Statement.

19

## C.    Introduction

As the trial court shall demonstrate below, Mother's forty-six issues raised in her Concise Statement lack merit. Mother's matters raised on appeal demonstrate that she has misinterpreted the trial court decision and the evidence admitted at trial. She also has repeatedly challenged the court's credibility determinations without showing any abuse of discretion. Simply put, she has failed to show that the court erred or abused its discretion in finding that Appellant failed to establish, by a preponderance of the evidence, that Father abused child within the meaning of 23 Pa.C.S. §§ 6102(a)(1), (2) or (5). As a result, the trial court respectfully requests that the appellate court affirm its decision. The court addresses each of Appellant's matters *seriatim* below.

**1. Appellant's First Issue Mischaracterizes the Record, and Therefore, the Court's Decision Should Be Affirmed.**

Appellant's first issue in her Concise Statement contends:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based on the evidence that Father grabbed the minor child's arm and pushed him in an effort to retrieve the child's cell phone from him and compel him to go to bed, thereby causing him visible and painful bodily injuries.

First, the trial court notes that this issue mischaracterizes the testimonies presented to the court. First, neither Father nor child, the two eyewitnesses to the December 19th incident, testified at the PFA hearing that Father grabbed child. Ms. Smith, the CHOP social worker, testified that child had informed on December 21st, two days later, that Father had grabbed his arm and pushed him. N.T., 2/23/23 at 80. Since Ms. Smith failed to witness the December 19th incident, the court credited child's eyewitness testimony over her hearsay testimony.

Second, Appellant's assertion that Father had any physical interaction with child in gaining possession of the cell phone is simply not supported by the record. Child had been

20

speaking to Mother through headphones in his bedroom when Father, having asked child several times to terminate his phone call and go to bed, took child's cell phone sitting on child's desk. *Id.* at 49, 249-250. Accordingly, he gained possession of the phone without any physical interaction with child. *Id.*

Indeed, the evidence of record shows that after Father took the cell phone, child followed him into the living room, screaming. *Id.* at 50, 251. Child then initiated physical interaction with Father, jumping up and down to regain possession while Father held the phone over his head. *Id.* at 50, 252. According to child, the bruise occurred when Father pushed child's arm away; Father did not recall any physical interaction and did not know how child was bruised. *Id.* at 51, 281. After ten seconds of child jumping up and down, Father returned the phone to child. *Id.* at 51, 252. Child retreated to his bedroom and called Mother. *Id.* at 51.

Child and Father had only one other verbal interaction that night, when Father tried to again tell child to go to bed.[13] *Id.* at 252. Father stated that child continued to refuse, which can be evidenced by the transcribed playback of Mother's phone call during the hearing. *Id.* at 167-170, 252. Father had no other physical interaction with child that night.

Therefore, testimonies by Dominique Smith, the CHOP social worker, Ms. Maguire, the Bryn Mawr nurse and Mother which suggest that Father "grabbed" and "pushed" child to retrieve the phone merely represent cases of "whisper down the lane." Clearly, the retelling by Mother and Ms. Smith rendered it more dramatic and violent. Unfortunately, this retelling sharply diverged from accounts by Father and child, the eyewitnesses, at the hearing. Accordingly, the court appropriately credited child's and Father's testimonies. *Id.* at 48-51, 248-252.

---

[13] On the transcribed phone call in the record, Father tells child to go to bed. N.T., 2/23/23 at 167.

Last, Appellant confuses fact and fiction by contending that Father caused child "painful bodily injuries." Child testified that the bruise was located six inches from his wrist. *Id.* at 52. It was flat, not swollen. *Id.* The bruise lasted about a week and was about an inch or two in size. *Id.* at 53, 59-60. There was only one bruise. It hurt if he touched it "a teensy bit"; otherwise, it did not hurt. *Id.* at 60. Child testified that the bruise failed to prevent him from engaging in any activities. *Id.* The small nature of the bruise was corroborated by Exhibit P-3, Appellant's photo of the bruise. Given child's testimony and the photo, Exhibit P-3, it is clear that in her first issue, Appellant has greatly exaggerated the record in characterizing child's one bruise as "painful injuries."

For these reasons, the court requests that its decision be affirmed.

## 2. Appellant's Second Issue Mirrors her First Matter and Therefore Should Be Deemed Waived.

Appellant's second issue is an exact duplicate of Appellant's first issue. *See* pp. 20-22 above. Therefore, the trial court declines to address this issue and the court requests that this issue be deemed waived.

## 3. The Trial Court's Decision That Appellant Failed to Prove by a Preponderance of the Evidence that Father's Actions Constituted "Abuse" Within the Meaning of § 6102(a) Was Supported by the Record and Constituted Neither an Abuse of Discretion nor an Error of Law.

In Appellant's third issue, she states:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based upon Father's attempting to cause or intentionally, knowingly or recklessly causing bodily injury to the minor child, A.P.

In this issue, Mother challenges the courts determination that Mother failed to establish, by a preponderance of the evidence, that Father attempted to cause or intentionally, knowingly or recklessly caused bodily injury or serious bodily injury to child. *See* 23 Pa.C.S. § 6102(a)(1). As

22

explained below, Appellant's reliance on this issue is misplaced. Therefore, this argument does not have any merit for the following reasons.

First, child's testimony of Father's conduct fails to meet the definition of abuse pursuant to § 6102(a)(1). Child recalled that Father held child's phone high so child could not reach it. Child began jumping to grab the phone back. Child then added that, "and then he pushes my arm away." N.T., 2/23/23 at 49, 50-51. Father confirmed that he held the phone over both their heads, and he also admitted that it is possible that he could have accidentally pushed child's arm away while child was jumping to grab it back. *Id.* at 281. However, he added that he did not purposefully make physical contact with child. *Id.* The court found Father's testimony credible that child's bruising may have occurred accidentally when child was jumping up and down to reach for the phone.

Second, both child and Father confirmed that Father videoed this interaction with his phone, although the video accidentally ended when Father locked his phone with the side button. *Id.* at 250-251, 260. Father stated that he was holding both his phone and child's phone during the altercation. N.T., 2/23/23 at 251; *see* Exhibit D-4.[14] Child failed to specify if Father was holding both phones or only his phone.

If Father was holding both phones, it is difficult to understand how Father had a free hand to push child's forearm and cause a bruise. In any event, the entire incident lasted approximately thirty seconds from bedroom to living room and child's return to bedroom. Father then immediately returned the phone to child who retreated to his bedroom, called his Mother and must have eventually gone to sleep. N.T., 2/23/23 at 51, 252, 253, 282.

---

[14] The trial court notes that it is visibly difficult to see Father holding two phones in his photo, introduced as Exhibit D-4. The court allowed him to testify to Exhibit D-4 but failed to accord the photo itself much weight as it was not a clear photo. N.T., 2/23/23 at 263-264.

Last, child informed the court that the bruise was about an inch in diameter, and it only hurt when he touched it "a teensy bit." *Id.* at 53, 60. Further, child stated that it did not affect any of his daily actions. *Id.* at 60. The bruise appeared very faint in Mother's photograph. *See* Exhibit P-3. As the bruise was small and barely hurt the child, the court credited Father's testimony that child's bruise accidentally resulted from Father's and child's minor scuffle over the phone.

As stated above, "…th[e] [Superior] Court defers to the credibility determinations of the trial court as to witnesses before it." *S.G.*, 233 A.3d at 909 (citation omitted). Further, "the trier of fact, while passing on the credibility of witnesses and the weight of evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Walsh*, 36 A.3d 613, 619 (Pa. Super. 2012).

The Court found child's and Father's testimonies consistent and credible. Neither child nor Father testified that Father acted intentionally, recklessly or knowingly when child was bruise. Moreover, Mother failed to establish that Father attempted to cause child's bruise.

Accordingly, she failed to meet her burden to establish abuse pursuant to § 6102(a)(1). The record was devoid of any evidence that Father intentionally, knowingly or recklessly pushed child's arm, or that he attempted to cause child's bruise or any other bodily injury. Therefore, Appellant failed to establish "abuse" pursuant to 23 Pa.C.S. § 6102(a)(1), and the trial court's decision should be affirmed.

4. **The Trial Court's Decision That Appellant Failed to Prove by a Preponderance of the Evidence That Father's Actions Constituted "Abuse" Within the Meaning of § 6102(a)(2) Was Supported by the Record and Constituted Neither an Abuse of Discretion nor an Error of Law.**

In Appellant's fourth issue raised on appeal, she states:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based upon Father's actions which would place A.P. in reasonable fear of imminent serious bodily injury.

24

Again, Appellant's reliance on this argument is in error as detailed below.

As stated above, the trial court serves as fact finder, determines credibility and assesses the weight accorded to testimony. The Superior Court defers to the trial court's credibility determinations. *S.G.*, 233 A.3d at 909 (citations omitted); *see T.G. v. K.W.*, 2022 WL 303328 at *4 (Pa. Super. 2022) (citations omitted) (the trial court is responsible for resolving conflicting testimony); *see also Walsh*, 36 A.3d at 619 (citation omitted). Moreover, the evidence must be viewed in a light most favorable to the petitioner, granting her the benefit of all reasonable inferences. *Id.*

As a result, review of the events that occurred on December 19th in the light most favorable to Appellant establishes that the trial court committed neither an error of law nor an abuse of discretion in finding that Father's actions did not place child in reasonable fear of imminent serious bodily injury pursuant to § 6102(a)(2) for the following reasons.

The trial court based its decision primarily on child's testimony which it found credible. In that testimony, child reiterated three times that he is scared of Father. N.T., 2/23/23 at 46, 54, 59. During the second instance, he clarified that he was scared of him because "[Father] hurts [him]," specifically stating that within the last year, Father has spanked him with both his hand and his belt. *Id.* at 54.

While the court has no doubt that child feared Father's past administration of corporal punishment, child's testimony failed to suggest any action by Father on December 19th to hit child, administer or threaten to administer corporal punishment or make any threat of violence whatsoever.[15] Therefore, the court concluded that child's fear of Father's actions on December

---

[15] The trial court notes that corporal punishment is permitted in the Commonwealth of Pennsylvania. "The Protection from Abuse Act does not outlaw corporal punishment by a parent." *Miller, o/b/o minor child J.W. v. Walker*, 665 A.2d 1252, 1258 (Pa. Super. 1995). Notwithstanding the legality of corporal punishment, excessive

25

19th based on Father's past administration of corporal punishment cannot deemed "reasonable" under § 6102(a)(2).

Additionally, the record supports the court's finding that child's fear on December 19th was not reasonable within the statutory meaning of "abuse." *See* 23 Pa.C.S. § 6102(a). On December 19th, child confirmed in his testimony that although his bedtime was 9:30 p.m., he failed to heed Father's several warnings to terminate his phone call and go to bed. N.T., 2/23/23 at 46-48.

Notwithstanding child's refusal to adhere to Father's requests, Father failed to confront child physically or verbally. Rather, while child spoke on the phone, with his headphones, on the bed, Father quietly took the phone off the desk and went into the living room. *Id.* at 50, 251. Child followed him, "chas[ing] after [him] screaming hysterically saying [Father] can't do that." *Id.* at 251. Father held both hands above his head and child's head, and child began jumping and grabbing for the phone. *Id.* at 49-50, 251-252. In fact, according to Father, child was "trying to grab [his] arm pulling it down trying to grab the phone." *Id.* at 252.

After ten seconds of child attempting to regain the phone by jumping and grabbing, Father relented and returned the phone to child. *Id.* at 51, 252. Child marched back to his room, stopping at his door and yelled: "[y]ou're an asshole." *Id.* at 252. Child confirmed that he uttered this expletive towards Father. *Id.* at 55

Consequently, the record is devoid of any evidence that on December 19th, Father comported himself in any manner which would cause child to have a "reasonable fear of serious

---

corporal punishment might be considered abuse under Pennsylvania law. *Compare B.T.W., o/b/o T.L. v. P.J.L.*, 956 A.2d 1014, 1016-17 (Pa. Super. 2008) with *Ferri v. Ferri*, 854 A.2d 600 (Pa. Super. 2004). There was no allegation in the instant case that Father's past administration of corporal punishment was excessive or left any bruising or injury.

26

bodily injury" pursuant to § 6102(a)(2). For this, Appellant failed to meet her burden and the trial court's decision should be affirmed.

**5. The Trial Court's Decision That Appellant Failed to Prove by a Preponderance of the Evidence That Father's Actions Constituted "Abuse" Within the Meaning of § 6102(a)(5) Was Supported by the Record and Constituted Neither an Abuse of Discretion nor an Error of Law.**

In Appellant's fifth issue raised in her Concise Statement, she contends:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based upon Father's engaging in a course of conduct or repeatedly committing acts toward the minor child which would place the child in reasonable fear of bodily injury.

At the end of the hearing, it was not immediately apparent to the court the bases of § 6102(a) upon which Mother had relied in her Petition. In response to the court's questioning, her counsel cited three grounds, including 23 Pa.C.S. § 6102(a)(5). N.T., 2/23/23 at 317.

In arguing that Father had committed abuse within the meaning of § 6102(a)(5), she relied on several facts: Father's placement of video cameras throughout the home, his past administration of corporal punishment with a belt and his disabling of child's phone. *Id.* at 195-196, 212, 286-288, 313. She contended that these three actions constituted a course of conduct that placed child in reasonable fear of bodily injury. *See* 23 Pa.C.S. § 6102(a)(5). Ultimately, the court found that Mother failed to meet her burden by a preponderance of the evidence for the following reasons.

First, regarding the video cameras, the trial court asked Mother to clarify her argument so the court could better understand it. Mother's counsel responded:

THE COURT: Okay. In about two or three sentences can you tell how the video cameras would place the child in reasonable fear of bodily injury?
MS. KANE: I think that's harassment, Your Honor. And also the belt, you had testimony from the child about being hit by the belt.
THE COURT: Okay. So the Statute – okay. So this Statute is actually almost a mirror image of 2709(a) (3) which is the Summary Harassment Statute. Except that it requires

27

that the person be placed in fear – in reasonable fear of bodily injury. So all I'm asking you in three sentences or less because it's not immediately apparent to me how the cameras place the child in immediate fear of reasonable bodily injury. For example we have situations where there has been – there has been some kind of – there have been altercations in a relationship and immediately the other partner starts showing up everywhere, says weird things, acts weird. And that's the section that we would – that they would be seeking a petition. So can you just explain to me what your thought process here is because –

MS. KANE: Yes.

THE COURT: – that immediately apparent to me.

MS. KANE: Yes. Because the father is retaliating against the child if the child is talking to the mother or doesn't want to be there. And the fact that he hid a camera in the child's room and the child – again Your Honor doesn't agree with me but it's obvious what's happening here. And I believe the child testified too – I know it was a little lurky, the father elicits a reaction from the child. And what the father does is not on the camera. The father selectively videotapes the reaction of the child but not what the child did. And Your Honor thinks this is just a child who is not – who is denying parental authority. That's not what this is.

N.T., 2/23/23 at 318-319.

Even with Mother's counsel's explanation above, the trial court struggles to understand how the use of video cameras throughout Father's house placed child in reasonable fear of bodily injury. When the trial court asked child how the video cameras made him feel, he responded "[l]ike violated." *Id.* at 62. The court credits child, believing that is a very rational feeling towards the video cameras. However, child failed to express any fear because of the video cameras.

Further, while the cameras may have caused child discomfort, discomfort is different from "a reasonable fear of bodily injury," as required by § 6102(a)(5). Indeed, it seems as if the contrary could be true: the installation of cameras recording everyone's behavior would tend to discourage actions that could be construed as abuse.[16] In sum, the record of the February 23rd

---

[16] The court does not wish to minimize the importance of child's discomfort with the video cameras in the house, particularly the one found in his bedroom closet. However, this issue may be best considered by the court in any custody proceeding where the best interests of the child would be considered. *See* 23 Pa.C.S. § 5328(a).

hearing failed to establish that the cameras caused child to be in reasonable fear of bodily injury, and the court declined to issue a PFA Order on that ground.

Second, Appellant's argument that Father's disabling of child's phone causes him reasonable fear of bodily injury is also difficult to discern. At the hearing, Appellant failed to demonstrate how Father disabling child's phone instilled a reasonable fear of bodily injury.

The evidence established that child uses his phone to communicate often with Mother, not for his own safety. *Id.* at 47-48. Indeed, Mother corroborated child's testimony: that they speak frequently while in Father's custody. *Id.* at 57, 145. Even after Father disabled child's phone, child was able to call Mother through the emergency function. *Id.* at 212.

However, as discussed below, child's wish to speak with Mother past bedtime cannot trump Father's reasonable request to go to bed on time on a school night. Under that circumstance, the court must assess as reasonable Father's decision to disable the phone so that only emergency calls may be made.

Last, the court analyzed in the prior issue Father's past administration of corporal punishment. It determined that on December 19th, Father did not threaten to hit child or administer corporal punishment or strike him in any way. Indeed, the court considers his physical interaction with child at most *de minimis* or accidental based on child's testimony that Father pushed child's arm away as child tried to grab his phone back from Father. *See* above at pp. 24-27. Therefore, the court properly failed to deem child's fear of Father's actions on December 19th "reasonable" because of any history of corporal punishment.

Accordingly, the court neither erred nor abused its discretion in denying Mother's Petition on that basis. Therefore, the trial court respectfully requests that its decision be affirmed.

29

### 6. Child's Expression of Fear Alone Fails to Warrant a Finding of Abuse Within the Meaning of §§ 6102(a)(2) and (a)(5).

In Appellant's sixth issue raised to the appellate court, she states:

> The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based on the evidence that based upon Father's conduct, the child repeatedly testified that he is afraid of him because he hurts him. (N.T. 46, 54) In its failure to make an abuse finding, the Trial Court further discounted Mother's own testimony that since the alleged incident of abuse on Dec. 189, 2022, the child's demeanor had changed and that he is fearful to go to Father's home. (N.T. 213) The child now grinds his teeth, has nightmares and has separation anxiety with regard to Mother (N.T. 216)[17]

Here, Mother argues that child's anxiety and expressed fear subsequent to the events of December 19th require the trial court to find abuse within the meaning of §§ 6102(a)(2) or (5). She errs in relying on this argument for the following reasons.

First, both §§ 6102(a)(2) or (5) require that the alleged victim's fear be "reasonable." The court found that Father apparently pushed child's arm away after he had exercised reasonable parental authority in confiscating child's cell phone when child refused to terminate his phone call and go to bed. Father had no other physical interaction with child, and he returned the phone within seconds. N.T., 2/23/23 at 252. The trial court found that child's fear of Father based on this incident was not "reasonable." *See* above at pp. 24-27 and 27-29.

Second, Mother argued that child reasonably feared Father because he had spanked child in the past, hitting him with a belt. N.T., 2/23/23 at 54, 184-185. Based on Father's *de minimis* physical contact with child that evening, the court found that any fear expressed by child based on the December 19th event was not reasonable, even considering Father's history of corporal punishment. *See* above at pp. 24-27.

---

[17] The court notes that it listed all of Mother's raised issues verbatim, including typographical errors. The court intends this footnote to serve in lieu of the use of "(sic)" throughout the remaining issues.

Third, Appellant presented no evidence to suggest that Father had ever threatened to or inflicted any bodily injury or serious bodily injury upon child, including when Father administered corporal punishment. Therefore, the court could not conclude that child had a reasonable fear that Father would inflict any bodily injury or imminent serious bodily injury within the meaning of §§ 6102(a)(2) or (5) on December 19th.

For these reasons, the trial court's decision should be affirmed.

### 7. The Trial Court Properly Exercised its Discretion in Excluding the Nurse Supervisor's Testimony Because It Was Cumulative.

In her seventh matter on appeal, Appellant contends:

The Trial Court committed an error of law and/or abuse of discretion in disallowing the testimony of the nurse supervisor in the hospital where the minor child was treated. The Trial Court claimed that her testimony was cumulative to that of the treating nurse who saw the child on a previous day in a previous encounter. (N.T. 10-13). Moreover, she was on the court-ordered list to testify as a witness.

At the outset, it should be noted that this issue is far from concise, as required by Pa.R.A.P. 1925(b)(4)(ii) and (b)(4)(iv) and therefore should be deemed waived.

In the alternative, turning specifically to Appellant's issue, before the parties began introducing evidence, the trial court reviewed both counsel's list of witnesses on the record to determine whether there were objections by opposing counsel and determine whether this witness would offer relevant and non-cumulative evidence. N.T., 2/23/23 at 4-32. Appellant offered Ms. Maguire, child's treating nurse from Bryn Mawr Hospital, to testify regarding child's December 23-24th hospitalization. *Id.* at 12-13. Child was hospitalized for a few days after the December 19th incident on December 23rd with symptoms of vomiting and stomach upset. *Id.* at 11, 94, 135, 179. Mother proffered that Ms. Maguire also was going to testify about child's reaction to Father and child's "bruises." *Id.* at 10-11. The court permitted her testimony.

Appellant also offered the nurse supervisor at Bryn Mawr Hospital testify. *Id.* at 10. Since the court had already ruled that the treating nurse, Ms. Maguire, could testify, the court asked Appellant's counsel for a proffer. *Id.* Counsel proffered that the nurse supervisor would testify that child was afraid of Father and that she had witnessed the bruises. *Id.* The court found that the testimony would be cumulative as the court had ruled that Ms. Maguire could testify *See* Pa.R.E. 403 ("[t]he court may exclude relevant evidence if its probative value is outweighed by the danger of needlessly presenting cumulative evidence").

Pursuant to Pennsylvania Rule of Evidence 611, "[t]he court should exercise reasonable control over the mode and order of examining witnesses and present evidence so as: (1) make those procedures effective for determining the truth; (2) avoid wasting time..."

The court had already interviewed child and subjected him to cross-examination, obtaining first-hand information about the December 19th incident. N.T., 2/23/23 at 38-67. Child had explained his fear of Father and his recollections of the incident. *Id.* As Appellant failed to explain how the nurse supervisor's testimony would differ substantially from that of Ms. Maguire, the court deemed her testimony cumulative and excluded it to promote a more efficient hearing.

The second error claimed by Appellant is that the trial court was obliged to allow the nurse supervisor to testify because she was listed on Appellant's witness list. Conduct of a hearing or trial is within the sound discretion of the trial court. Pa.R.E. 611; *see Commonwealth v. Jones*, 651 A.2d 1101, 1106 (Pa. 2003) (citations omitted) ("[t]he order in which evidence is presented is a matter committed to the trial court's discretion and its rulings will not be interfered with absent an abuse of that discretion").

32

A witness list merely proposes the possible witnesses that counsel may call: the decision as to whether a party or counsel may call a witness is within the court's discretion and may not be disturbed absent an abuse of that discretion. *Id.* Since the nurse supervisor's testimony was clearly cumulative based on Appellant's counsel's proffer, the court properly exercised its discretion to exclude her testimony in favor of Nurse Maguire. Therefore, its decision on this basis should be affirmed.

### 8. The Trial Court Neither Committed an Error of Law nor Abused Its Discretion in Allowing Jorge Monroy-Garcia To Testify.

In her eighth issue, Appellant states:

The Trial Court committed an error of law and/or an abuse of discretion in allowing Jorge Monroy-Garcia Father's neighbor, to testify when the Trial Court had previously issued an Order requiring both parties to identify their witnesses and exhibits prior to trial. Unlike the nurse supervisor who was excluded as a witness, he was not on the witness list. Further, Mr. Monroy-Garcia was not a witness to the alleged abuse between Father and the minor child. (N.T. 17-18,223-224)

First, the court notes that Mr. Monroy-Garcia was included on Father's pre-trial list of witnesses. Therefore, her claim that the court erred in allowing Father to call Mr. Monroy-Garcia because Father failed to place his name on the pre-trial witness list is simply mistaken. Moreover, Appellant's citation of this issue as a basis for appeal is misplaced.

Second, the court permitted Mr. Monroy-Garcia to testify as a rebuttal witness. The trial court permitted Appellant to call two witnesses who did not witness the alleged abuse: Ms. Maguire, the Bryn Mawr Hospital nurse, and Dominique Smith, the CHOP social worker. N.T., 2/23/23 at 75, 93.

Ms. Maguire testified that child had expressed that he did not want Father to visit with him in his hospital room. *Id.* at 94-97. Indeed, upon child's request, Ms. Maguire asked Father to refrain from visiting with child on two separate occasions. *Id.* at 96-97. Similarly, Ms. Smith relayed that child "express[ed] that he did not like going to [Father's home]. But he didn't

33

express fear." *Id* at 81-82. Both confirmed the presence of bruising on child's forearm. *Id*. at 80, 94.

Having heard testimony that several days after the December 19th incident, child remained nervous and disquieted in the presence of Father, the trial court allowed Father to offer a counter-narrative through Mr. M████-G████. Mr. M████-G████ is a neighbor who watches child in the morning, when Father needs to leave for work, and takes the child to school with his daughter, E., who is also ten. *Id*. at 229.

He testified briefly that child came to his house with Father both on December 20th and December 21st, right after the incident. *Id*. at 231, 232-233. He observed their interactions and noted that "[t]hey were like usual." *Id*. at 231. Mr. M████-G████ further noted that he had no concern for child's safety, explaining that child seemed "normal" while interacting with Father and expressed no fear of him. *Id*. at 231-232, 233. On cross-examination, he admitted that child does not confide in him and does not discuss his relationship with Mother or Father. *Id*. at 236-237.

The court declined to accord much weight to Ms. Smith's, Ms. Maguire's, Ms. P████'s or Mr. M████-G████'s testimonies. While child's demeanor with Father subsequent to the December 19th incident could be considered tangentially relevant, the court accorded much more weight to Father's and child's eyewitness testimonies about the events of December 19th.

In sum, allowing Father to present Mr. M████-G████ to rebut Mother's witnesses was neither an error or law nor an abuse of discretion, and the trial court's decision should be affirmed.

### 9. The Trial Court Neither Committed an Error of Law nor Abused Its Discretion in Allowing Vanessa Pelaez to Testify.

In Appellant's ninth issue raised in her Concise Statement, she asserts:

34

The Trial Court committed an error of law and/or an abuse of discretion in allowing V█████ P█████, Father's sister, to testify when the Trial Court had previously issued an Order requiring both parties to identify their witnesses and exhibits prior to trial. (N.T. 237-239) Unlike the nurse supervisor who was excluded as a witness, she was not on the list. Further, she was not a witness to the alleged abuse between Father and the minor child. (N.T. 27-28) In fact, when questioned whether Father's sister would be called, Father's counsel stated that that "there was no possibility that (she) would be called" as a witness. (N.T.28)

While Ms. P████ was not on the witness list, having heard Ms. Smith's and Ms. Maguire's observations that child remained anxious in Father's presence several days after the December 19th incident, in its discretion, the trial court allowed brief testimony as rebuttal from Ms. P████, child's aunt and Father's sister.

She recounted that she was on a video call with Father, child and many members of their family on Christmas Day. N.T., 2/23/23 at 244. She further noted that child and Father appeared comfortable and were laughing and joking. *Id.* at 244.

As stated above, the trial court notes that it gave little weight to Ms. Smith's, Ms. Maguire's, Ms. P████'s or Mr. M█████-G█████'s testimonies about child's demeanor or interactions with Father days after the incident because they were not at Father's home December 19th and otherwise had no probative evidence to offer about what had occurred that day. Therefore, the court considered their testimony much less persuasive than that of the eyewitnesses: Father and child. Instead, the trial court weighed Father's and child's testimonies heavily in its determination. The trial court also considered Mother's testimony, since she heard part of the incident in real time.

As a result, the court failed to abuse its discretion in allowing Ms. P████ to testify briefly in rebuttal to Mother's witnesses. In the alternative, even if the court's exclusion of this testimony was in error, it was harmless as it had little or no effect on the court's determination to

35

deny Mother's Petition for a Final PFA Order on behalf of minor child. *See Com. v. Lebo*, 592 A.2d 353, 357 (Pa. Super. 1991). Therefore, the trial court's decision should be affirmed.

**10. The Trial Court Neither Committed an Error of Law nor Abused Its Discretion When the CYS Caseworker Inadvertently Sat in the Courtroom and Heard Testimony For a Few Minutes.**

In her tenth issue, Appellant claims that:

The Trial Court committed an error of law and/or an abuse of discretion in allowing Nicole Strofe, a CYS Caseworker, to sit in the courtroom and hear testimony prior to her testifying. The Trial Court refused to sequester her. (N.T. 27-28, 106-107).

Again, Appellant's reliance on this issue is in error. Pursuant to Pennsylvania Rule of Evidence 615, "[a]t a party's request the court may order witnesses sequestered so that they cannot learn of other witnesses' testimony." "The purpose of sequestration is to prevent a witness from molding his testimony with that presented by other witnesses..." *In the Interest of N.A.P., a Minor*, 216 A.3d. 330, 334 (Pa. Super. 2019), *citing Commonwealth v. Counterman*, 553 Pa. 370, 399-400, 719 A.2d 294, 299 (1998) (citations omitted).

The trial court notes that it has been its custom, without any specific showing of prejudice by either party, to routinely order sequestration of all witnesses, except experts, in all courtroom proceedings. Thus, its sequestration order in this matter was not based on any specific concern that any particular witness' testimony be tainted by another.

The record shows that Ms. Strofe was in the courtroom on two occasions: at the beginning of the hearing and right before she was called to testify. N.T., 2/23/23 at 27-28, 106-107. At the beginning of the hearing, Ms. Strofe witnessed discussions on the record about exhibits and witnesses – in other words, the court's consultation with attorneys about how the hearing was to be conducted. *Id.* at 4-32. No witnesses testified while she was present.[18] When

---

[18] The first witness called at the hearing was child, who testified in the robing room in the presence of counsel and the trial judge. His testimony begins on page 38 of the February 23, 2023 transcript.

36

Appellee's counsel indicated that he wanted to call Ms. Strofe after Appellant had completed her case-in-chief, the trial court excused Ms. Strofe to return to her office in the Delaware County Courthouse/Government Complex, to remain on call to be summoned before the end of the workday, by 4:30 p.m. *Id.* at 29, 30-32.

It is difficult to understand how Appellant was prejudiced by Ms. Strofe's presence in the courtroom when the court and counsel were trying to organize the hearing by determining the witnesses and reviewing the exhibits list before the hearing commenced.

Moreover, Appellant incorrectly states that the trial court refused to sequester her; in fact, she was sequestered during the first several hours of the hearing. The record demonstrates that right before Ms. Maguire, the Bryn Mawr nurse, took the stand, Appellee's counsel summoned Ms. Strofe back to the courtroom, anticipating the conclusion of Appellant's case-in-chief, as Ms. Strofe needed to complete her testimony before the end of the workday. *Id.* at 90. She entered the courtroom sometime during the testimony of Ms. Maguire, the Bryn Mawr Hospital nurse. *Id.* at 106-107.

Further, Ms. Strofe's inadvertent presence in the courtroom during the testimony of Ms. Maguire resulted in no prejudice to Appellant. Ms. Maguire treated child when he received inpatient treatment at Bryn Mawr Hospital on December 23rd and December 24, 2022. She offered her observations of child during his hospitalization. *Id.* at 94, 106-107.

On the other hand, Ms. Strofe's testimony was confined to her observations of child during his forensic interview on February 10, 2023 and her report of the findings of the CYS investigation. *Id.* at 110, 112-113. After investigation, CYS had deemed the report of abuse "unfounded." *Id.* at 109-110.

Both of these well-trained individuals testified about entirely different incidents. If subjected to a colloquy, each might have been qualified by the court in their respective fields of expertise. *See* Pa.R.E. 703. Neither one observed the child at the same time. Therefore, hearing part or even all of Ms. Maguire's testimony could not have, in any way, "molded" Ms. Strofe's testimony.

Based on the different roles played by each witness in this incident and their observations of different events that occurred at different times, the court struggles to discern how Ms. Strofe's witnessing part or all of Ms. Maguire's testimony altered her testimony in any way. Appellant cannot show that she suffered any prejudice from Ms. Strofe's presence in the court during Ms. Maguire's testimony, and therefore, the trial court's decision should be affirmed.

### 11. The Trial Court Credited Child's Testimony That Father Appeared to Push Child's Arm Away.

In Appellant's eleventh issue raised in her Concise Statement, she contends:

The Trial Court committed an error of law and/or an abuse of discretion in disregarding the testimony of the minor child who stated that Father took the phone away from him and then "pushed his arm." (N.T. 45) In fact, the Trial Court affirmatively stated that the child never used the word "push" despite that the child did, in fact, use this word. (N.T. 308-309).

As described above in Appellant's sixth issue, her issue is based solely on the trial court's credibility determinations. *See* above at pp. 30-31. Further, the trial court credited child's testimony. However, in Appellant's third issue, the trial court analyzes child's testimony regarding Father pushing his arm. *See* above at pp. 22-24.

As this matter is subsumed in Appellant's third issue, the court requests that this issue be deemed waived. For this reason, the trial court's decision should be affirmed.

38

## 12. Appellant Mischaracterizes the Record in Claiming That the Trial Court Failed to Credit Child's Testimony.

In Appellant's twelfth issue raised on appeal, she states:

The Trial Court committed an error of law and/or an abuse of discretion in disregarding the minor child's testimony that before Father pushed his arm, the child was on the phone with Mother and that he does this "a lot" when he stays with Father because (he) is scared of him." (N.T. 45-46)

As the court stated in discussing Appellant's sixth issue above, child's expression of fear alone fails to warrant a finding of abuse within the meaning of §§ 6102(a)(2) or (5). *See* above at pp. 24-27 and 27-29. The court credited child's fear yet still determined that Mother had failed to meet her burden.

Section 6102(a)(2) requires that child have a reasonable fear of "imminent serious bodily injury," while Section 6102(a)(5) requires only a reasonable fear of "bodily injury." Based on § 6102(a)'s statutory language and supporting case law, child's reasonable fear must be based on the alleged abusive incident, that is, the December 19th incident as well as other circumstances, such as past abuse. In its analysis, the court found child's fear was not reasonable within the meaning of §§ 6102(a)(2) or (5) for several reasons.

First, at most, child's physical interaction with Father on December 19th was limited to Father pushing child's arm away as child sought physical contact with Father to wrest his phone from Father's grasp. Second, the record demonstrates that Father failed to engage in any threatening behavior on December 19th. Last, Appellant failed to present any evidence that Father's past administration of corporal punishment ever caused any "bodily injury," any "imminent serious bodily injury" or that Father ever threatened to inflict bodily injury on child.

39

As a result, the court neither erred as a matter of law nor abused its discretion in finding that that child's fear of Father was not "reasonable" within the meaning of §§ 6102(a)(2) or (5) and its decision should be affirmed.

### 13. Appellant's Thirteenth Issue Misconstrues the Record and Therefore Should Not Serve as a Basis for Appeal.

In Appellant's thirteenth issue, she contends:

The Trial Court committed an error of law and/or an abuse of discretion in disregarding the testimony of the child that Father initially took the phone away from him while he was talking to Mother and then he held the phone over the child's head in the living room and when the child tried to grab it, he "pushed" him. Then when the child jumped to try to grab the phone, Father pushed his arms away. (N.T. 48-50, 59)

As stated above in its discussion of Appellant's third and fourth issues at pp. 22-24 and 24-27, this court credited both child's and Father's testimonies because they were substantially similar. When Father took child's phone in response to his several reasonable requests for child to go to bed on a school night, child followed him, screaming. N.T., 2/23/23 at 50, 251. Father held child's phone over his head while child jumped up and down, trying to grab the phone back from Father. *Id.* at 50, 252, 282. The court credited child's testimony that Father lightly pushed child's arm away, perhaps causing the bruise. The record was devoid of any evidence that Father intentionally, knowingly or recklessly hurt child – the bruise was clearly accidental. *Id.* at 281.

Therefore, Appellant mistakenly relies on this issue, and the trial court's decision should be affirmed.

### 14. The Existence of Child's Bruise Alone Fails to Establish Abuse Pursuant to the PFA Act.

In Appellant's fourteenth issue raised in her Concise Statement, she states:

The Trial The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse where the Child testified and actually displayed for the Trial Court that he had a bruise about five to six inches from his right wrist. The Trial

Court also ignored Child's testimony that he had a flat red mark where he had been bruised and that he later developed a bruise on his hand. (N.T. 51-53)

The court found child's description of his bruise convincing. Three additional witnesses described the bruise: Mother, Ms. Maguire and Ms. Smith. The court admitted a photograph of child's bruise. *See* Exhibit P-3.[19] However, as explained above, the fact that child was bruised alone does not establish abuse pursuant to the PFA Act. The existence of a bruise/red mark alone does not establish that Father attempted to cause the bruise or intentionally, knowingly or recklessly caused child's bruise. *See* 23 Pa.C.S. § 6102(a)(1); *see* above at pp. 22-24. Moreover, the existence of a bruise/red mark alone also does not establish that child was placed in reasonable fear of imminent serious bodily injury. *See* 23 Pa.C.S. § 6102(a)(2); *see* above at pp. 24-27. As a result, Appellant failed to meet her burden by a preponderance of the evidence, and the court's decision should be affirmed.

### 15. Appellant Misconstrues the Record in Characterizing Father's Past Behavior As a "Pattern of Physical Violence."

In Appellant's fifteenth issue raised on appeal, she states:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based on the testimony offered by the child indicating that there has been a pattern of physical violence by Father against the child as evidenced by his testimony that in the past Father had physically hurt him including spanking him with his hand and belt. (N.T. 54)

As described above, the court credited child's testimony that Father had administered corporal punishment through spanking and, on at least one occasion, hit him with a belt. N.T., 2/23/23 at 54. Mother confirmed this testimony. *Id.* at 184-185. However, the record is devoid of any evidence that this corporal punishment constituted a "pattern of physical violence" inflicted

---

[19] The Court notes that the photograph of the bruise, taken several days after the incident and admitted as Exhibit P-3, reflects, at worst, a minor bruise. Nevertheless, the court credited the above witnesses' testimony, especially child's, regarding its description, assuming that by the time the photograph was taken, the bruise had already faded.

41

on child, as averred by Appellant. Moreover, no evidence was presented that either Mother or Father ever inflicted any physical injury on child when they administered corporal punishment.[20]

Therefore, this issue also fails to provide any basis for appeal, and the trial court's decision should be affirmed.

### 16. Child's Fear Alone Fails to Constitute a Basis for Granting a PFA Order Under the Act.

In Appellant's sixteenth issue raised, she states:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based on the evidence that the child repeatedly testified that he is scared of Father because he hurts him. (N.T. 54, 59)

As explained in the court's discussion of Appellant's Sixth and Twelfth Matters above, child's fear of Father's past administration of corporal punishment alone fails to constitute a basis to grant relief under the PFA Act. *See* pp. 30-31 and 39-40. While the court credited child's testimony that he feared Father, it determined that Appellant failed to meet her burden of proof under §§ 6102(a)(2) and (5) and denied her Petition. Therefore, the court's decision should be upheld.

Additionally, Appellant's fourth issue analyzes that the trial court credited child's testimony regarding the December 19th incident, including his statement that he feared Father. *See* above at pp. 24-27.

As a result, the trial court addressed this issue above and this issue should be deemed waived. It respectfully requests that the appellate court affirm its decision.

### 17. Appellant's Seventeenth Issue Fails to Meet the Requirements of Pa.R.A.P. 1925(b)(4)(ii) and Is Also Redundant. Therefore, It Should Be Deemed Waived.

In Appellant's seventeenth issue raised, she contends:

---

[20] In her Concise Statement, Mother omits that the record suggests that she too spanked child in the past. N.T., 2/23/23 at 313-314.

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based on the evidence that after this incident happened, the child called Mother and reported to her that had been pushed by Father and that Father had taken away his phone. (N.T. 57-58)

The trial court fails to understand how child's report of the December 19th incident to Mother meets the statutory definition of abuse pursuant to 23 Pa.C.S. § 6102(a). Pennsylvania Rule of Appellate Procedure 1925(b)(4)(ii) requires that the Concise Statement of Errors Complained of on Appeal "concisely state each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Appellant's seventeenth issue fails to meet this standard and should not be considered by the Superior Court. *See In re A.B.*, 63 A.3d 345, 350 (Pa. Super. 2013) (an appellant's concise statement must properly specify the issue to be addressed on appeal or the issue is waived) (citation omitted).

Moreover, the court has addressed specifically all the facts underlying Mother's claim pursuant to 23 Pa.C.S. §§ 6102(a)(1), (2) and (5) above and therefore, this issue is redundant. *See* pp. 22-24, 24-27 and 27-29. As a result, this issue should be deemed waived, and the trial court's decision should be affirmed.

### 18. Appellant's Eighteenth Issue Mirrors Her Fifth Issue and Is Redundant. Therefore, It Should Be Deemed Waived.

In Appellant's eighteenth issue raised in her Concise Statement, she contends:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based on the evidence that Father has video cameras throughout his home and that the child not only testified that Father uses them to record his reactions to Father's behavior but in addition, that Father secreted a video camera in the child's bedroom closet to record him. He further stated that Mother does not have video surveillance in her home. (N.T 61-63) Father himself even admitted that he had installed a video camera in the child's closet (N.T. 282-283) He later stated incredibly, that the camera was only installed for audio purposes. (N.T. 284) And, that he did not remove the camera until the child found it. (N.T. 285)

43

The court addresses this issue in Appellant's fifth issue above. *See* pp. 27-29. As a result, the trial court respectfully requests that its decision be affirmed.

**19. The Record is Devoid of Competent Evidence that Father Selectively Turned the Video Cameras On and Off.**

In her nineteenth issue, Appellant contends:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based on the evidence that the child testified that Father selectively turns the video surveillance on and off. (N.T. 64) As a result, video surveillance may not be reliable as a complete interaction between Father and child may not be recorded.

Appellant's reliance on this issue again is misguided for several reasons.

First, the court notes that Appellant mischaracterizes child's testimony in this matter. Child had no idea if Father selectively turns the video cameras on and off; he merely speculated that he did:

MS. KANE: Does he turn off the cameras when he does something and then turn them on for his reaction. That's what I want to qualify. Is the camera on when he does something or is it only turned on when he wants to film the reaction.
THE COURT: Did you understand that? Because I kind of barely didn't.
CHILD: Well, I can't tell when he turns it on. But he – yeah, I think he does.

N.T., 2/23/23 at 64. The child "thinking" Father turns the video cameras on and off cannot constitute competent evidence upon which the court may base its decision.

Second, the court failed to rely solely on the videos. Rather, these videos corroborated the testimony of the only eyewitnesses to the December 19th event: Father and child. Weighing the evidence, according its weight and assessing credibility is in the province of the trial court. *See Walsh*, 36 A.3d at 619 ("[T]he trier of fact, while passing on the credibility of witnesses and the weight of evidence produced, is free to believe all, part or none of the evidence").

44

In sum, Appellant's contention that child testified that Father selectively turned his video cameras on and off mischaracterizes his testimony. As a result, her contention is not supported by the record and the trial court's decision should be affirmed.

**20. Appellant's Twentieth Issue Misconstrues the Record and Misinterprets the PFA Statute, 23 Pa.C.S. §§ 6102(a)(1), (2) and (5).**

In Appellant's twentieth issue raised, she states:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based upon the fact that it discounted the testimony of Dominique Smith, a Caseworker at Children's Hospital of Philadelphia who spoke with the child, testified that his story was consistent with what the child told the Trial Court, and that she observed the bruise on the child's arm. (N.T. 73-80)

This argument has no merit for three reasons. First, Ms. Smith never testified that child's CHOP interview comported with child's testimony at the February 23, 2023 hearing. Indeed, if she had, that testimony would have been fiction. The child testified in the robing room, in the presence of only the trial court judge, Ms. Kane, Mother's counsel, and Ms. Johnson, Father's counsel. Ms. Smith testified via telephone remotely. Since Ms. Smith was not privy to child's testimony at the hearing, it would have been impossible for her to know what child told the court in the presence of counsel. Accordingly, Appellant is mistaken in asserting that Ms. Smith testified that child's account of the December 19th incident at CHOP comported with child's testimony to the court at the hearing.

Second, the court committed no error or abuse of discretion in weighing Ms. Smith's testimony. Ms. Smith's account of the December 19th incident, based on her interview with child on December 21st at CHOP, failed to comport with child's and Father's testimony at the PFA hearing and therefore the court accorded it less weight.

She testified that child told her that: "dad then took the phone from [child] and the physical struggle ensued over the phone which resulted in dad – according to [child] dad grabbed

45

his arm and pushed him." N.T., 2/23/23 at 80. However, this account contradicts both child's and Father's testimonies at the PFA hearing. Neither child nor Father stated that Father grabbed child's arm. Neither spoke of a physical struggle. Neither stated that Father pushed child, implying child's whole body had been pushed- child testified that Father pushed his arm. *Id.* at 51, 281. Accordingly, the court weighed Father's and child's testimony much more heavily than that of Ms. Smith, who failed to witness the December 19th incident.

Last, there is no dispute that child was somehow bruised on his forearm on December 19th. However, as the court addressed in Appellant's third and fourth issue, Appellant's argument that the existence of the bruise alone constitutes "abuse," pursuant §§ 6102(a)(1) or (2), flies in the face of the clear language of the statute. *See* above at pp. 22-24 and 24-27. For these reasons, the trial court's decision should be upheld.

### 21. The Trial Court Properly Excluded Ms. Smith's Proffered Testimony Concerning Child's Report of Prior Incidents of Abuse as Hearsay and Thus Committed No Error of Law or Abuse of Discretion.

In her twenty-first issue, Appellant contends:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse by refusing to allow Ms. Smith to testify as to the child's telling her of other incidences in which Father hurt him, despite the fact that this information would have evidenced a course of conduct on behalf of Father. (N.T. 80-81)

Appellant's reliance on this issue as error is misplaced. She called Dominique Smith, a CHOP social worker, to testify about her interactions with the P████ family on December 21, 2022. N.T., 2/23/23 at 75. Ms. Smith further testified that the medical team had summoned her to consult with child and his family about a possible child abuse incident. *Id.* at 76. She spoke with Mother, Stepfather, child's older sister and child. *Id.* at 77.

Appellant asked Ms. Smith: "[a]nd did [child] tell you of any other occurrences where [Father] had hurt him?" *Id.* at 80. Appellee's counsel objected, asserting that this question would

46

elicit hearsay. *Id.* at 81. The court correctly ruled that Ms. Smith's answer would constitute hearsay for the following reasons.

Pennsylvania Rule of Evidence 801(c) defines hearsay as ... "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."

The testimony that Appellant tried to elicit meets this very definition. Appellant had asked Ms. Smith to recount out of court statements that child had made regarding past incidents where "[Father] had hurt him." *Id.* at 80. Clearly, such a statement is the very essence of hearsay: an out of court statement offered to prove the truth of the matter asserted. *See* Rule 801(c).

Even if testimony is relevant to prove abuse under the PFA Act § 6102(a), it may still remain objectionable under the Pennsylvania Rules of Evidence. As Ms. Smith's proposed testimony constituted hearsay, Appellant needed to establish an exception to the hearsay rule to gain its admission. *See* Pa.R.E. 802. She failed to do so, as explained below.

Appellant argued that this testimony met the requirements of Pennsylvania Rule of Evidence 803(4). This provision states:

> **(4)** *Statement Made for Medical Diagnosis or Treatment.* A statement that: **(A)** is made for – and is reasonably pertinent to – medical treatment or diagnosis in contemplation of treatment; and **(B)** describes medical history, past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment.

Pa.R.E. 803(4).

Thus, this exception establishes a two pronged test: the hearsay statement must be pertinent to medical treatment or diagnosis and also must describe medical history or past or present symptoms as reasonably pertinent to treatment, or diagnosis in contemplation of treatment. *Id.* Ms. Smith's testimony failed to meet this hearsay exception in two respects. First,

47

the purpose of Ms. Smith's interview of child was to screen for child abuse, not assess any medical treatment. N.T., 2/23/23 at 75-76, 83.

Second, determining whether Father had previously hurt child was hardly necessary to administer treatment to the child for the sole injury with which he presented: a bruise to his forearm. Indeed, the record is unclear why Mother brought child to CHOP for treatment and what treatment, if any, would be administered for a small bruise on child's forearm. Therefore, this evidence failed to meet the requirements of Rule 803(4) and was properly excluded.

Even if the court erred, this evidence of Father's prior administration of corporal punishment had already been confirmed by two first-hand sources: Father and child. *Id.* at 54, 313. Child confirmed that Father had hit him with a belt and had spanked him in the past. *Id.* at 54. Father confirmed his administration of corporal punishment via spanking. *Id.* at 313. Mother had confirmed child's testimony that Father spanked him and hit him with a belt. *Id.* at 184-185. No other evidence was present to allege any other abuse on Father's part. As three witnesses affirmed Father's past administration of corporal punishment, Ms. Smith's testimony was merely cumulative. *See* Pa.R.E. 403. As a result, any error was harmless, and the trial court's decision should be affirmed.

### 22. Appellant Misinterprets the Record in This Matter and Therefore the Court Failed to Abuse Its Discretion or Commit an Error of Law.

Appellant's twenty-second issue states:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based upon the fact that it stated that there was a stipulation as to an existent Protection From Abuse Order with regarding to the child's sibling and that this Order is relevant to Father's violent propensities. (The Order is under appeal.) (N.T. 14)

Appellant's reliance on this issue is misplaced as explained below.

48

First, Appellant's mistakenly refers to the Notes of Testimony at 14 to support her claim of error. There, the parties indicated that they had entered into a Stipulation as to admission of Mother's Petition for a PFA Order and the Temporary PFA Order **in this matter**, not in child's sister's case. This interpretation is supported by the court's statement:

> THE COURT: Okay. I have a Protection from Abuse Petition. I have a PFA order. We're stipulating to those. And they don't even need to be put in because they're part of the record. Right?
> MR. JOHNSON: Correct.

N.T., 2/23/23 at 14.

The court construed Ms. Kane's silence as assent. Indeed, it is axiomatic that the Petition and Temporary Order are part of the record in each PFA case and therefore need not be specially admitted or stipulated.

Notwithstanding Ms. Kane's misunderstanding regarding the above exchange, the trial court took notice, on the record, of its PFA decision with respect to child's older sister.[21] *Id.* at 216. However, the court still fails to understand Appellant's argument. Each PFA petition is fact specific. The court rendered its decision in child's older sister's case based on the record presented in that case. On the other hand, it appropriately based its decision on the evidence presented in child's case. Basing its decision in child's case on his sister's case with two different records would have been improper, and the court declined to do so.

Further, Appellant's suggestion that the PFA Order in S.P.'s case established Father's "violent propensities" seriously mischaracterizes the court's decision. *See* court's 1925(a) Opinion.[22] Indeed, the phrase "violent propensities" is never used in the court's Opinion.

---

[21] CV 2022-080576. After a lengthy hearing similar to the instant case, the court issued Mother a six month PFA with Additional Findings. The PFA expires June 30, 2023. This case was appealed by Father to the Superior Court and is pending before the court. *See* 320 EDA 2023.

[22] *Pelaez o/b/o S.P. v. Pelaez*, Sup. Ct. No. 320 EDA 2023.

49

In sum, Appellant has mischaracterized the record in this matter and the record in Mother's PFA proceedings on behalf of S.P. She then engaged in a faulty leap of logic to assert that somehow the court's opinion in *P⬛ o/b/o S.P. v. P⬛*, CV 2022-080576, Sup. Ct. No. 320 EDA 2023, establishes abuse under the PFA Act in the instant case. Her contention should be rejected, and the trial court's decision affirmed.

### 23. The Trial Court Correctly Excluded Ms. Smith's Assessment Summary as Hearsay.

Appellant's twenty-third issue states:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based upon it's excluding Ms. Smith's Assessment Summary in which it reports that the child "reports that (Father) 'spanks him with a belt .' " This report is consistent with what the child's testimony and making such a report is part of Ms. Smith's normal protocol in when completing an assessment in these types of cases.

Appellant's reliance upon this issue is also misplaced for several reasons. At the outset, this issue echoes her twenty-first matter, in which she claims as error that the court excluded Ms. Smith's testimony regarding alleged incidents of past abuse towards child by Father. *See* above at pp. 46-48. In this respect, this issue violates Pennsylvania Rule of Appellate Procedure 1925(b)(4)(iv): it is redundant and should be considered subsumed in the twenty-first matter. It therefore should be deemed waived.

Aside from the redundancy, the court notes that Appellant neglects to mention that when she sought to introduce the assessment summary, the court had already limited Ms. Smith's testimony about her interview with child because it was based on inadmissible hearsay, as explained in the court's discussion of Appellant's twenty-first matter. N.T., 2/23/23 at 80-81; *see* pp. 46-48. Therefore, Appellant's subsequent attempt to introduce the assessment summary, which is a written report of Ms. Smith's interview with child, created another level of hearsay. N.T.2/23/23 at 85; *see* Exhibit P-1.

50

The court indicated at the hearing, as it did above, Appellant failed to show that these statements met the requirements of Pennsylvania Rule of Evidence 803(4), an exception to the hearsay rule, for several reasons. First, the social worker did not interview child to assess any appropriate medical treatment. Rather, she had been summoned to consult with the medical team to determine whether child abuse had occurred.

Second, determining whether Father had previously hurt child was not necessary to administer child's treatment for the sole injury that he had suffered, the bruise to his forearm. Therefore, child's statements within the assessment report remained inadmissible under Rule 803(4). *See* discussion above regarding her twenty-first matter above at pp. 46-48.

Subsequently, the court afforded Appellant the opportunity to otherwise establish admissibility through another hearsay exception. N.T., 2/23/23 at 85. She failed to do so and so the report was excluded. *Id.* at 85-86.

Last, Appellant could have qualified Ms. Smith as an expert social worker in the area of child abuse. *See* Pa.R.E. 702. She then could have provided her expert opinion and its bases, which would include any history upon which her opinion was based. *See* Pa.R.E. 703. Again, she failed in this regard.

Even assuming *arguendo* that the court erred, this evidence of Father's prior administration of corporal punishment was made part of the record by first-hand sources: Father and child. N.T., 2/23/23 at 54, 313. Both had confirmed that Father had spanked child. Mother had confirmed the same. *Id.* at 184-185. The court credited child's testimony that in the past, Father had hit him with a belt. *Id.* at 54. As three witnesses confirmed Father's past administration of corporal punishment, the court believed that this fact had been established. As a result, Ms. Smith's assessment report was merely cumulative, and any error was harmless.

51

For these reasons, the trial court's decision should be affirmed.

**24. Appellant's Twenty-Fourth Concise Matter is Rife with Errors and Therefore Should Not Serve as Basis for Appeal.**

In Appellant's twenty-fourth issue, she argues:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based upon its disallowance of the Hospital Records of 12/21/22. (N.T. 91-94)

In her twenty-fourth matter, Appellant references the December 21st CHOP records, Exhibit P-1, which were excluded as hearsay. Mother's citation of Notes of Testimony, pp. 91-94, perplexes the court. At the beginning of these Notes of Testimony, the court states that it is excluding the CHOP records. N.T., 2/23/23 at 91. However, the remaining pages transcribe the beginning of Ms. Maguire's testimony, which involves the Bryn Mawr Hospital visit on December 23rd, not the CHOP visit. *Id.* at 91-94. Nonetheless, the issue clearly references the CHOP records, and Mother's twenty-sixth issue references the Bryn Mawr Hospital records, which the court analyzes below. *See* pp. 54-56.

The court ruled that the CHOP records constituted hearsay pursuant to Pennsylvania Rule of Evidence 801(c). Hearsay is defined as "...a statement that (1) the declarant does not make while testifying at the current trial or hearing[,] and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Clearly, the CHOP records are out of court statements made on December 21st that Mother attempted to enter for the truth of the matter asserted. Therefore, the court appropriately ruled that these records were inadmissible hearsay.

In her twenty-third issue, Mother challenged the exclusion of Ms. Smith's assessment summary, a summary of the CHOP social worker's impressions that were included on page eight of the CHOP records. N.T., 2/23/23 at 84; *see* Exhibit P-1; *see* above at pp. 50-52.

52

Ms. Smith testified that she authored the assessment summary, N.T., 2/23/23 at 84, but Mother sought to enter the entire record of child's visit at CHOP. Ms. Smith only authored that short assessment summary. *See* Exhibit P-1. In fact, when questioned about other pages in the CHOP records, Ms. Smith states she did not participate in any other medical treatment of the child, and she only performed the child abuse assessment because she is a social worker. N.T., 2/23/23 at 83-84.

Ms. Smith was the author of only one of the nineteen pages of CHOP medical records. Her assessment summary was excluded because it was based on child's inadmissible hearsay statements. *See* above at pp. 50-52. She failed to verify that she was a custodian or a qualified witness who could authenticate the remaining eighteen pages pursuant to Pennsylvania Rule of Evidence 803(6). Therefore, the court correctly ruled that these CHOP records were inadmissible *See* Pa.R.E. 802. Accordingly, this court's decision should be affirmed.

### 25. Ms. Maguire's Testimony That She Saw Child's Bruise and That Child Reported That Child "Got Them from His Dad" Fails to Establish Abuse Pursuant to the PFA Act.

In Appellant's twenty-fifth issue, she contends:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based upon the testimony of Nurse Megan Maguire of Bryn Mawr Hospital who testified that in the course of her treating the child for vomiting, she noticed that he had bruises on his forearm and that when she questioned him, he stated that "he got them from his dad.) (N.T. 94)

Unfortunately, Mother's reliance on this matter is misplaced.

Ms. Maguire's testimony fails to establish abuse pursuant to § 6102(a). Both Father and child testified that child sustained a bruise on his arm in the living room on December 19th. N.T. 2/23/23 at 51-52, 281. Ms. Maguire witnessed the bruise when child was hospitalized on

53

December 23rd. *Id.* at 94. While child told her that he had sustained a bruise from Father, she could not recall how this occurred. *Id.* at 94, 106.

Accordingly, Ms. Maguire's testimony fails to establish "abuse" under the PFA Act. Her vague testimony that she saw the bruise but failed to recall the origin of the bruise does not constitute competent evidence to establish abuse. The Act requires not only bodily injury, but that the defendant "attempt[] to cause" or "intentionally, knowingly or recklessly caus[e] bodily injury." *See* 23 Pa.C.S. § 6102(a)(1). Since Ms. Maguire had no idea how child was bruised, her testimony had limited utility in determining whether Mother met her statutory burden.

Moreover, Ms. Maguire's testimony failed to support any finding that Father had placed child in "reasonable fear of imminent serious bodily injury." N.T., 2/23/23 at 94-97; *see* 23 Pa.C.S. § 6102(a)(2). Her testimony failed to establish that child was afraid of Father. N.T., 2/23/23 at 93-97. Last, her testimony failed to provide any evidence to support a finding that Father had engaged in a course of conduct to place child in "reasonable fear of bodily injury." *See* 23 Pa.C.S. § 6102(a)(5).

As a result, Appellant's argument that the court erred in failing to find abuse based on Ms. Maguire's testimony simply ignores the PFA Act's clear statutory language and the record. Therefore, the trial court's decision should be affirmed.

### 26. The Trial Court Correctly Refused to Admit the 12/23/22 Hospital Records as Hearsay.

Appellant's twenty-sixth issue reads:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based upon its refusal to admit the Hospital Records of 12/23/22. (N.T. 99-100, 104)

54

In this matter, Appellant contends that the court erred in two ways: its failure to admit the 12/23/22 Bryn Mawr Hospital records and its subsequent failure to find abuse based on these records. Again, Appellant's reliance on this issue is misplaced.

There are three Rules of Evidence that permit the trial court to exclude the Bryn Mawr Hospital records, introduced as Exhibit P-2. First, the records constituted hearsay within the meaning of Pennsylvania Rules of Evidence. *See* Pa.R.E. 801(c) ("'[h]earsay' means a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement"). They were statements recorded by Bryn Mawr Hospital staff on December 23rd and 24th. Pursuant to Pennsylvania Rule of Evidence 802, the records contain inadmissible hearsay statements unless Mother established a hearsay exception, which she failed to do.

Second, child was treated for gastrointestinal symptoms. N.T., 2/23/23 at 11, 94, 135, 179. As he was treated for a physical ailment distinct from the allegations of abuse, it is difficult to understand how admission of these records would have assisted the court in any way to render a determination under 23 Pa.C.S. § 6101 *et seq*. Consequently, the records pertaining to child's treatment for such symptoms are not relevant. *See* Pa.R.E. 401 ("[e]vidence is relevant if[] (a) it has any tendency to make a fact more or less probable than it would be without the evidence[,] and (b) the fact is of consequence in determining the action").

Last, any reference to child's bruise within the Bryn Mawr Hospital records was cumulative. *See* Pa.R.E. 403 ("[t]he court may exclude relevant evidence if its probative value is outweighed by danger of … needlessly presenting cumulative evidence"). Ms. Maguire testified about her observations of child, including her observations about child's bruise. N.T., 2/23/23 at 94. Further, as the court explained on the record, child and Mother had already established the

existence of the bruise. Mother also offered a photo of the bruise. N.T., 2/23/23 at 98-99; *see* Exhibit P-3. Additionally, Ms. Smith observed child's bruise. N.T., 2/23/23 at 80. Consequently, the court believed that the evidence showed that the existence of the bruise on child's arm was undisputed. Thus, the court ruled the Bryn Mawr Hospital records offered to establish child's bruise were merely cumulative.

Accordingly, for the reasons listed above, this issue too must fail, and the trial court's decision should be affirmed.

### 27. Appellant Incorrectly Claims that Nurse Maguire Testified Child Expressed Fear of Father.

In Appellant's twenty-seventh issue, she contends:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse despite the fact that the Trial Court itself acknowledged that Nurse Maguire testified that the child was afraid to be alone with dad and that Father had to be escorted out of the hospital by hospital security. (N.T. 101) Father even admitted in his own testimony that on both days when he went to the hospital, the child. asked him to leave and he was escorted out by security on the second day (N.T. 302)

Appellant's reliance on this issue is misplaced as Mother mischaracterizes the evidence. As a result, this issue has no merit.

A careful review of the record fails to establish that Ms. Maguire testified that child was afraid of Father. Rather, she recalled that child was "anxious," "very timid," and "very nervous" when she first met him. N.T., 2/23/23 at 94. She further offered that when Father first came to the hospital, child expressed that he did not want child in his hospital room. *Id.* at 96. When Father returned, hospital security was called, prompting him to leave the hospital. *Id.* at 97. In sum, Ms. Maguire never testified that child was afraid of Father; she merely testified that child did not want Father in his hospital room and was discomfited by his presence. *Id.* at 96-97.

56

Yet Appellant pounces on the court's statement that Ms. Maguire testified that child was "afraid" to be alone with Father. *Id.* at 101. Review of Nurse Maguire's testimony clearly shows that the court mischaracterized Ms. Maguire's testimony, confusing it with that of child, who clearly testified that he was afraid of Father. *Id.* at 46, 54, 59. This was a simple misstatement, not a ruling by the court because the hearing was not even half completed; the court had made only evidentiary rulings, not rulings on the merits. A ruling regarding child's "fear" of Father would have constituted such a substantive ruling. Indeed, lengthy testimony and exhibits presented required the court to take the matter under advisement, instead of rendering a ruling from the bench. *Id.* at 326-27.

Therefore, Ms. Maguire's testimony establishes that child was timid and nervous. *Id.* at 94, 106. She failed to provide a reason why child asked Father to leave his room, and the court found the evidence insufficient to draw any conclusions. Father offered that child becomes uncomfortable whenever he is in a room with both Mother and Father due to their contentious separation and litigation. *Id.* at 303-305. The court gave little weight to Father's speculation.

The court credited child's testimony that he was afraid of Father but ultimately determined that his fear of Father on December 19th was not "reasonable" based on the record and the circumstances. *See* discussion above at pp. 24-27.

In sum, as a result, Appellant incorrectly states that Ms. Maguire testified that child was afraid of Father. She also incorrectly relies on the court's obvious mischaracterization of Ms. Maguire's testimony that she had testified that child was afraid of Father. For these reasons, the trial court's decision should be affirmed.

**28. The Trial Court Properly Allowed Nicole Strofe, an Experienced CYS Case Worker Supervisor, To Offer Her Opinion on Whether Child Had Been Coached.**

In her twenty-eighth issue, Appellant alleges:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based upon its allowing Nicole Strophe, the CYS Caseworker to offer an opinion as to whether the minor child and his sibling were coached when interviewed by her, despite the fact that she has no medical training whatsoever and is not qualified to make such a determination. (N. T. 112-113)

At the outset, the court notes again that Appellant unartfully frames this issue: does she contend that the court's allowing Ms. Strofe to offer an opinion that the children were coached should have resulted in the court's finding abuse? Most assuredly, her framing of the issue is mistaken.

Rather, it appears that Appellant contends that the court erred or abused its discretion in allowing Nicole Strofe, the CYS case worker, to testify that she believed that child had been coached in the forensic interview.

Both child and his older sister, S.P. were interviewed forensically on February 10, 2023 as a result of a ChildLine report pertaining to child. N.T., 2/23/23 at 110.[23] Ms. Strofe witnessed the interview via video. *Id.* at 118-119. During child's interview, she testified that he offered three different narratives to explain how he was bruised. *Id.* at 113. First, child explained that his phone was on his desk. *Id.* It is not clear how he was bruised as he failed to recount a physical interaction with Father in this scenario. Second, child claimed that Father was trying to retrieve the phone from him, and they collided in some way and the phone hit his wrist. *Id.* Again, this explanation concedes that child's bruising appeared accidental and therefore Father failed to

---

[23] The record is not clear as to when a ChildLine report was made. However, since child presented at CHOP on December 21, 2022 and CYS was summoned to CHOP on that date, the court gleans that the report must have been made on or about that day because both CHOP and CYS are mandated reporters of child abuse.

cause bodily injury to child under § 6102(a)(1). Last, child indicated that the phone fell on the desk, and child hit his wrist on the desk. *Id.* Again, this explanation suggests an accident in which Father had no involvement. Based on the inconsistent narratives, Ms. Strofe determined that child was coached. *Id.* at 112-113.

Ms. Strofe is a case worker supervisor with Delaware County CYS. *Id.* at 108. She has worked at CYS for five years, has a Bachelors' Degree in social work and currently attends graduate school to obtain her master's degree in social work. *Id.* at 112. She has participated in over one hundred forensic interviews. *Id.* As a result of her extensive experience and training, the court allowed her to offer an opinion as to whether child was coached. *Id.* As a result, it is difficult to discern how the court's ruling constituted an error or abuse of discretion. *See* Pa.R.E. 702.

Even assuming that the court erred in allowing Ms. Strofe's opinion, child's conflicting testimony, in which he offered three different scenarios to explain his bruise, casts serious doubt on his credibility at the forensic interview.

In any event, as explained in the court's Findings of Facts above, the court credited child's explanation at the hearing of how he was bruised and still found no basis for issuing a Final PFA Order. As a result, if the court had erred in permitting Ms. Strofe to testify, that error should be deemed harmless and the trial court's decision affirmed.

### 29. Delaware County CYS Worker Camille Sellers Interviewed Mother at CHOP. Therefore, Appellant's Twenty-Ninth Issue Is Factually Mistaken.

Appellant's twenty-ninth issue contends:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based upon the testimony of Nicole Strofe, CYS caseworker, who indicated that in her investigation of this matter, she made a finding without ever interviewing Mother. (N.T. 114-115).

59

The relevance of this issue as to whether Father abused child within the meaning of 23 Pa.C.S. §§ 6102(a)(1), (2) or (5) on December 19th is difficult to discern. At the outset, the trial court notes that Ms. Strofe testified that CYS social worker Camille Sellers interviewed Mother at CHOP on December 21st. N.T., 2/23/23 at 77, 114. As explained above, Ms. Strofe did not investigate this matter; she supervised other case workers in their investigation. *Id.* at 108, 118. Her involvement consisted of her observation of the forensic interview and participation in the agency's decision that the ChildLine report was "unfounded."

As a result, Mother's characterization of the record is mistaken; Mother was interviewed at CHOP by Ms. Sellers, not Ms. Strofe. Moreover, it is difficult to understand this issue has any bearing on the court's determination that Mother failed to meet her burden to establish abuse pursuant to §§ 6102(a)(1), (2) and (5). Therefore, the trial court's decision should be affirmed.

### 30. Appellant's Thirtieth Issue Lacks Specificity and Should be Deemed Waived.

In Appellant's thirtieth issue, she states:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based upon the fact that Ms. Strofe concluded that the bruises to the child were not caused intentionally and yet she admitted that she has no idea how the bruises to the child occurred. Ergo, how could she make such a conclusion? (N.T. 116-118)

Ms. Strofe testified that the child was not bruised intentionally in response to a question posed by the court:

THE COURT: Could you just tell us what you're (sic) standard for making an – so in elegant. An unfounded finding, could you just tell us what your standards are?
MS. STROFE: Sure. The P█████ Family was referred to the Agency as a result of the report that alleged causing bodily injury to a child through recent act of failure. More specifically causing so that's a subcategory of abuse. A child protective services investigation resulted in a status determination of unfounded and declined services. Child completed a forensic interview at the Delaware County Child Advocacy Center on February 10 where CYS was present as well as law enforcement. The child did not disclose a clear and concise statement of abuse. This incident was not caused intentionally, knowingly or recklessly. The allegations could not be substantiated in

60

accordance with the CPSL Law as the child was not suffering from an injury that caused impairment or substantiated pain. Law enforcement has also closed their investigation with no criminal charges.

N.T., 2/23/23 at 109-110.

The trial court strains to understand Appellant's issue here. Ms. Strofe stated that child offered three separate accounts to explain how he obtained the bruise on December 19th. *Id.* at 113. As a result of these thoroughly inconsistent accounts, CYS remained unable to make a finding of abuse under the Child Protective Services Law ("CPSL"), 23 Pa C.S. § 6301 *et seq. Id.*

The child not only failed to present a consistent account supporting any abuse, but also the CPSL requires that child's injury be inflicted intentionally, knowingly or recklessly. Child's account failed to support this finding. Moreover, child's account failed to support a finding that he suffered an injury that caused impairment or substantial pain, an additional standard under the CPSL. As a result, CYS determined that the report "unfounded." *Id.* at 109. These standards differ from the PFA statute. As a result, the court fails to understand the basis of Mother's claim of error or abuse of discretion. *Compare* 23 Pa.C.S. § 6301 *et seq* with 23 Pa.C.S. § 6101 *et seq.*; *see also C.H.L.*, 214 A.3d at 1278 ("[t]h[e] [c]ourt cannot conduct a meaningful review if it has to guess what issues an appellant is appealing").

This issue should be deemed waived for lack of specificity. As a result, the trial court's decision on this issue should be upheld.

**31. Appellant's Thirty-First Issue Fails to State a Basis for Appeal.**

In Appellant's Concise Statement, her thirty-first issue alleges:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based upon the evidence that Ms. Strofe admitted that the three scenarios in which the child testified that he was hurt, could have actually been a continuing course of conduct at one time between him and Father and not inconsistent (N.T. 131).

The trial court cannot discern an identifiable issue for appellate review as explained below. Ms. Strofe testified that the CYS investigation was closed because during child's forensic interview, he supplied three different accounts to explain his bruise. N.T., 2/23/23 at 110, 112-113. Mother bases this matter on Ms. Strofe's response to her questioning on cross-examination:

> Q. Okay. My question to you is isn't it possible that the three different scenarios were just one long string of scenarios that occurred one after the other on the same night at the same time?
> A. Yes, it's possible.

N.T., 2/23/23 at 131.

Whether child's three accounts offered during the forensic interview were three inconsistent narratives or, as Mother's counsel suggested, "one long string of scenarios that occurred… on the same night at the same time" is not relevant. Neither the three inconsistent accounts nor the "long string of scenarios" establish abuse under the PFA Act. Indeed, Mother's counsel's suggestion can only be considered speculative and perhaps fanciful – in any event, it is utterly unsupported by the record.

As a result, the court strains to understand how Ms. Strofe's concession that child's inconsistent narratives during his interview could have been segments of a series of events on December 19th that took place raises an issue for appellate review. Therefore, this issue should be deemed waived. *See C.H.L.*, 214 A.3d at 1278 ("[t]h[e] [c]ourt cannot conduct a meaningful review if it has to guess what issues an appellant is appealing"). For this reason, the court's decisions should be affirmed.

### 32. Child's Repeated Calling of Mother While in Father's Custody Fails to Establish Abuse Pursuant to the PFA Act.

Appellant's thirty-second issue states:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse based upon the testimony of Mother that since the child's sibling

62

does not go to Father's home, the child calls Mother multiple times on the phone because he was scared and isn't sure whether his Father would hurt him. (N.T. 144)

The court addressed Father's past administration of corporal punishment in Appellant's fourth issue above. *See* above at pp. 24-27. Further, the court cannot discern how child's repeated phone calls with Mother establishes abuse pursuant to 23 Pa.C.S. § 6102(a). *See C.H.L.*, 214 A.3d at 1278 ("[t]h[e] [c]ourt cannot conduct a meaningful review if it has to guess what issues an appellant is appealing").

This issue should be deemed waived for lack of specificity, and the trial court's decision should be affirmed.

### 33. Mother's Claim of Error in Her Thirty-Third Issue, That Is, the Court's Electronic Recording Center's Failure to Transcribe a Small Part of the Transcript, Has Been Resolved.

In Appellant's thirty-third issue, she contends:

The Trial Court committed an error of law and/or an abuse of discretion in permitting Mother to playback her telephone recording of her telephone call with the minor child before, during and/or after the alleged abusive incident in question, and yet failing to direct it to be transcribed by the court reporter. The Audio Visual Department at the courthouse had made arrangements for the playback and there is no reason why this telephonic recoding was not transcribed despite the fact that the recording was played back in the courtroom where all present, could hear it. And on said recording the voices of Father and the minor child are heard, (which was actually stipulated to by Father's counsel). (N.T. 167)

When the court became aware of this issue through the review of Appellant's Concise Statement, the court requested that her staff listen to the relevant part of the record to ascertain if it was inaudible. It was not. The court then contacted the Delaware County Electronic Recording Center to seek an explanation. It had none. The court then immediately issued an order to mandate that the error be rectified. *See* court's Order, 4/10/23. The amended transcript has been supplied to parties and to the trial court. The court further understands that on April 24, 2023, it

was filed at the Office of Judicial Support and made part of the trial court record, available for the appellate court's review. Therefore, this issue should be deemed resolved.

### 34. Appellant Failed to Request That Mother Be Called in Rebuttal Upon the Completion of Appellee's Testimony and Therefore This Issue is Waived.

In Appellant's thirty-fourth issue, she states:

The Trial Court committed an error of law and/or abuse of discretion when it refused to allow Mother to return to the stand after Father's testimony to elicit rebuttal testimony from her. (N.T. 194)

Appellant is mistaken in her reliance on this issue for the following reasons.

At the conclusion of Appellant's testimony, the Notes of Testimony at page 194 record that the following exchange occurred between Appellant's counsel and the court:

MS. KANE: All right. I have no further questions.
THE COURT: Mr. Johnson --
MS. KANE: I will recall her later but I have no further --
THE COURT: There is no later, Ms. Kane.
MS. KANE: Well, I have redirect, Your Honor.
THE COURT: Yes, there's redirect and that's it. Mr. Johnson.

N.T., 2/23/23 at 197. Appellee's counsel's cross-examination then commenced.

The court clearly stated that Mother's request for redirect would be allowed. Mother's counsel apparently interpreted the Court's statement "[t]here is no later, Ms. Kane" as a specific ruling denying Mother's request to testify on rebuttal after Father's testimony. Indeed, at the conclusion of Father's testimony, which occurred after 7:15 p.m., Mother's counsel failed to request that Mother be called to rebut Father's testimony and the hearing was concluded.

It is unclear whether Appellant's counsel's request to call Mother "later" constitutes a specific reservation of her right to call her on rebuttal. As a result, Mother's counsel's failure to clearly state her request to call Mother on rebuttal and her failure to attempt to call Mother at the conclusion of the hearing should be deemed a waiver of this issue. Pa.R.A.P. 302(a) ("[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"); *see*

64

*Morgan v. Morgan*, 117 A.3d 757, 762 (Pa. Super. 2015). Raising this issue for the first time in her Concise Statement does not cure this error. *See Irwin Union Nat. Bank & Trust Co. v. Famous, 4 A.3d 1099, 1104* (Pa. Super. 2010*), appeal denied, 610 Pa. 610, 20 A.3d 1212* (2011). (issues not raised below cannot be cited for the first time on appeal). Therefore, this issue should be deemed waived.

In the alternative, it is difficult to discern how Mother's failure to testify on rebuttal would have altered the court's determination. Mother was not an eyewitness to the interaction between Father and child; she merely spoke to child before and after the event. Mother had already testified that she too tried to persuade child to terminate the call as he needed to go to bed. N.T., 2/23/23 at 145. After the event, Mother testified that child was upset, an undisputed fact. *Id.* at 161. Any testimony she would have offered would have been repetitive. In the alternative, Mother's failure to testify on rebuttal should be considered a harmless error, and the court's decision should be affirmed.

### 35. Father's Disabling the Ten Year Old Child's Cell Phone Fails to State Any Matter Warranting Appellate Review.

In her Concise Statement, Appellant's thirty-fifth issue reads:

The Trial Court committed an error of law and/or abuse of discretion in disallowing testimony regarding Father's pattern and course of conduct in disabling the child's telephone so that he could not communicate with Mother. (N.T. 209)

Again, Appellant's reliance on this issue is misplaced.

Mother testified that after child received the bruise on his arm, child was able to call her back, even though Father had disabled the phone except for an "emergency function."[24] N.T., 2/23/23 at 212. Appellant's counsel then attempted to introduce past history of Father disabling

---

[24] The court expects that this emergency function would also permit the user to call 911 to summon emergency services.

child's phone to "establish a course of conduct," presumably to establish abuse pursuant to §
6102(a)(5).

Child is ten years old. *Id.* at 39, 280. During Father's periods of custody, the court finds it
reasonable that child comply with Father's house rules. No child, least of all a ten year old child,
should have unfettered use of a cell phone. Further, the court is not familiar with any caselaw,
rule or statute that permits any minor unfettered access to a cell phone.

In this case, when child violated his privilege to use a cell phone, Father took it away and
disabled it so that child only had access to its emergency functions. The court believes that this is
Father's prerogative as a parent. Indeed, this alleged incident of abuse involved child's failure to
comply with Father's reasonable request to terminate his phone call with Mother as child had
school the next morning and child needed to go to bed. Moreover, Mother also tried to persuade
child to terminate the call as well and go to bed. *Id.* at 145.

The trial court fails to comprehend how Father's exercise of his parental responsibility to
regulate child's cell phone use constitutes "abuse" within the meaning of § 6102(a)(5) or any
other section of the PFA Act. Therefore, for this reason, the trial court's decision should be
affirmed.

### 36. The Court Neither Abused Its Discretion nor Erred as a Matter of Law in Excluding Mother's Testimony That Child Was Afraid to Visit Father Since Entry of a PFA Against Father on Behalf of Child's Older Sister.

In Appellant's thirty-sixth issue raised, she states:

The Trial Court committed an error of law and/or abuse of discretion in disallowing
testimony from Mother regarding the child's fear of going to Father's home alone since
his sibling was no longer going due to an outstanding Protection From Abuse Order (N.T.
210-211)

The court addressed the relevance of child's older sister's PFA Order in its discussion of

Appellant's twenty-second issue above. *See* above at pp. 48-50. Child's fear of Father as a result

66

of his older sister's PFA is not relevant under the statute. The court must inquire whether the petitioner has established that the defendant has committed "abuse" pursuant to § 6102(a). In this case, Appellant sought to demonstrate that Father had abused child within the meaning of §§ 6102(a)(1), (2) and (5). In so doing, the court was required to analyze Father's interactions with child, both in the past and on the evening of December 19th. The events of older sister's PFA Petition, which took place on April 13, 2022, and the issuance of a Final PFA Order to Mother on S.P.'s behalf are not relevant to the court's determination under the PFA Act.

As a result, the court neither abused its discretion nor erred as a matter of law. Therefore, its decision should be affirmed.

### 37. The Court's Admission of Video Evidence Complied with the Pennsylvania Rules of Evidence and Therefore Should Be Sustained.

In Appellant's thirty-seventh issue, she states:

The Trial Court committed an error of law and/or an abuse of discretion in entering Into evidence videotape testimony with ensuring that there were no chain of custody issues and that there had been no alteration of videotapes entered into the court record. One of the videos presented was a "Blink Video", and another "Ring Camera" camera videos, the originals of which were not presented to the court. (N.T. 251-260).

The court notes that Father introduced three video recordings: two from his cell phone and one from his "Blink camera." N.T., 2/23/23 at 257, 260, 263. Father did not introduce a video recording from his "Ring camera." *Id.* at 263-264.

Pursuant to the Pennsylvania Rules of Evidence, digital evidence may be authenticated by direct evidence, for example, through testimony by a person with personal knowledge. Pa.R.E. 901(b)(11)(A). Father authenticated this digital evidence pursuant to Pa.R.E. 901(b)(11)(A) as explained below.

First, Father testified that he made the two phone recordings on his phone of his interactions with child on December 19th. N.T., 2/23/23 at 257, 260. Second, Father stated that

67

he maintains the Blink camera in his home. *Id* at 261. Last, Father testified, under oath, that the proffered videos accurately depicted the December 19th incident and that none of these videos had been altered.[25] *Id.* at 256, 260, 263.

As a result, Father authenticated the three video recordings pursuant to Pennsylvania Rule of Evidence 901(b)(11)(A), and the court properly admitted them. *See In re D.Y.*, 34 A.3d 177, 185 (Pa. Super. 2011) (citation omitted) ("[c]hain-of-custody refers to the manner in which evidence was maintained from the time it was collected to its submission at trial").

As a result, the trial court's decision should be upheld.

### 38. The Court Properly Exercised Its Discretion in Crediting Father's Explanation Concerning the Lack of Video Footage from the Living Room.

In her thirty-eighth issue, Appellant contends:

The Trial Court committed an error of law and/or abuse of discretion in disregarding Father's statement that the video which captured the alleged abuse stopped because he "accidentally" pushed or hit some button. (N.T. 257) The alleged incident occurred in the living room but no video of the living room was presented. Once again, this statement supports the issue of the accuracy and integrity of the videos presented.

At the outset, the court notes that this issue is subsumed in Appellant's thirty-seventh matter discussed above. *See* pp. above 67-68. Therefore, it should be deemed waived.

In the alternative, Appellant argues that the court abused its discretion in finding that Father's explanation of a lack of video footage in his living room was credible. However, Appellant's reliance on this issue is misplaced.

In *Walsh*, 36 A.3d at 619, the court held that "[t]he trier of fact, while passing on the credibility of witnesses and the weight of evidence produced, is free to believe all, part or none

---

[25] The court notes that Father's account of the December 19th events was consistent with the videos. N.T., 2/23/23 at 248-253.

68

of the evidence." The court's determination of Father's credibility should be upheld for the following reasons.

Father testified that all three videos accurately depicted what transpired on December 19th. N.T., 2/23/23 at 256, 260, 263. He further explained that he accidentally stopped recording the video on his phone because he "must have hit the side button or something. I don't know what it was." *Id.* at 260. At this time, Father was trying to hold child's phone over his head while also trying to record child jumping up and down to retrieve his phone. *Id.* at 251-252. Additionally, child was screaming loudly. *Id.* With all of this activity, it is hardly surprising that Father became distracted and accidentally disconnected the video.

With respect to Father's Ring camera in his living room, Father credibly explained why he did not have a video of the incident in the living room despite having a Ring camera positioned in the living room:

> So the living room I have a Ring camera and those are motion activated. So before I went to A█████'s room I stood up, fix the couch a little bit, walked to his room. And then once the motion leaves it stops recording. And then there's a retrigger time that takes until the camera can pick up another motion. And you see in the video it was 30 seconds so apparently the camera did not have time to reset to pick up motion. And I was – it was very upsetting because that's the first thing I went to look for and it didn't record it.

N.T., 2/23/23 at 298-299.

At the hearing, Mother asserted that Father could have altered the videos and the court should discredit Exhibit D-3. *Id.* at 254-255. The court considered Mother's argument and Father's testimony that the videos were not altered. Mother's argument that Father had altered the videos was not supported by any evidence and therefore was mere speculation. Moreover, the trial court found that Father's and child's testimonies corroborated each other substantially and the videos contained in Exhibit D-3 corroborated their testimony.

As a result, the court's ruling that Exhibit D-3 should be admitted was neither an abuse of discretion nor an error of law. Therefore, the court's decision should be upheld.

### 39. The Court Neither Committed an Error of Law nor an Abuse of Discretion in Admitting Exhibit D-4 as Father Properly Authenticated It Pursuant to the Pennsylvania Rules of Evidence.

In Appellant's thirty-ninth issue raised on appeal, she contends:

The Trial Court committed an error of law and/or abuse of discretion in allowing to be entered into evidence a still video shot which has no identifying characteristics i.e. date and time when it was taken or from what video source it emanated. (N.T. 262)

Pursuant to the Pennsylvania Rules of Evidence, evidence may be authenticated by a witness with knowledge testifying that an item is what it is claimed to be. Pa.R.E. 901(b)(1).

The photo at issue was a still shot from the Blink video Father introduced in his Exhibit D-3. N.T., 2/23/23 at 265-266; *see* Exhibit D-4. Father stated the video was an accurate depiction of the events of December 19th.[26] N.T., 2/23/23 at 263.

Identifying the photo at the hearing, he described what the photo depicted, stating it was "[m]e walking out of [child]'s room with my phone in my left hand and his phone in my right hand." *Id.* at 269. Between the authentication of the video and description of the photo, the trial court found that Father properly authenticated Exhibit D-4 pursuant to Pa.R.E. 901(b)(1).[27]

Therefore, the trial court's decision should be affirmed.

### 40. Appellant's Fortieth Issue Should Be Deemed Waived as it Was Addressed in Her Thirty-Seventh and Thirty-Eighth Matters Complained of On Appeal.

In Appellant's fortieth issue, she states:

---

[26] The court notes that the transcript mistakenly states "the evening of December 18, 2022." N.T., 2/23/23 at 260.
[27] The court notes that earlier in the hearing, also through direct testimony, Mother authenticated a photo and asked that it be admitted. N.T., 2/23/23 at 174-175. This photo, like Father's, failed to include any identifying characteristics about the time, date or manner in which it was taken. *See* Exhibit P-3. As a result, the court finds Mother's argument disingenuous.

70

The Trial Court committed an error of law and/or an abuse of discretion in disregarding that Father acknowledged that he failed to provide a videotape of what occurred in the living room which is where the alleged incident occurred. (N.T. 294-295)

The trial court addressed this issue in Appellant's thirty-seventh and thirty-eighth matters. *See* above at pp. 67-68 and 68-70. This issue should be deemed waived and the trial court court's decision should be affirmed.

### 41. Appellee's Exhibit D-5 Was Properly Admitted as Rebuttal Evidence and Neither Constituted an Abuse of Discretion nor An Error of Law.

Appellant's forty-first issue contends:

The Trial Court committed an error of law and/or an abuse of discretion in that it allowed into evidence photographs of the child interacting with Father's family in around Christmas and (N.T. 270, 275-276) dismissing their lack of relevancy to the incident in question.

Father introduced photos from his family Skype call on Christmas day for the purpose of establishing that child did not appear to fear Father while participating in the Skype Call on Christmas Day, six days after the incident on December 19th. N.T., 2/23/23 at 274-279; *see* Exhibit D-5. Mother objected to the introduction of these photos, claiming "[they are] not relevant because this has nothing to do with the incident where the child is hurt." N.T., 2/23/23 at 270.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. Mother had sought relief pursuant to three statutory definitions of abuse under 23 Pa.C.S. § 6102(a): §§ (a)(1), (a)(2) and (a)(5). N.T., 2/23/23 at 317. Father contended that these photos rebutted Mother's contention that he had placed child in reasonable fear of imminent serious bodily injury. N.T., 2/23/23 at 277-279; *see* 23 Pa.C.S. § 6102(a)(2).

71

In Mother's case-in-chief, she called two witnesses, Ms. Smith from CHOP and Ms. Maguire from Bryn Mawr Hospital, to testify about child's demeanor on December 21st, December 23rd and December 24th. N.T., 2/23/23 at 79, 94. She sought to show that child demonstrated fear of Father.[28] Father's introduction of Exhibit D-5 sought to present a competing narrative: that on Christmas Day, child demonstrated no fear of Father. Indeed, the photos show child having fun and thoroughly at ease. *See* Exhibit D-5.

As Mother had the opportunity to present evidence to try to demonstrate child's fear of Father two and four days after December 19th, the court properly allowed Father to present evidence to rebut that narrative. For that reason, the court deemed this appropriate rebuttal evidence and admitted Exhibit D-5. As a result, the court's decision should be upheld.

### 42. Appellant's Forty-Second Issue is Solely a Credibility Determination and Therefore Lacks Merit.

In Appellant's forty-second issue, she contends:

The Trial Court committed an error of law and/or an abuse of discretion in accepting Father' testimony that he had no idea how the child got his bruises, despite his admitted interaction with the child. (N.T. 278)

As addressed in Appellant's sixth issue, this is solely a credibility determination. *See* above at pp. 30-31. The court failed to abuse its discretion in deeming Father's testimony credible.

For this reason, the trial court's decision should be affirmed.

### 43. Appellant's Forty-Third Issue Mischaracterizes the Court's Statements and Fails to Present a Basis for Appeal.

In Appellant's Concise Statement, her forty-third issue asserts:

The Trial Court committed an error of law and/or abuse or discretion in characterizing the alleged abusive incident as simply a case where a child did not want to go to bed and a

---

[28] Additionally, this court found that these two witnesses failed to clearly state that child expressed fear of Father. *See* discussion at 32-33.

72

parent endeavoring to compel his child go to bed, noting the "red marks" on the child" and yet dismissing or not questioning how they got there. (N.T. 291-293)

This matter mischaracterizes the trial court's statement, fails to raise any proper issue for appellate review and lacks merit.

Throughout Mother's case-in-chief, counsel argued that Father's abuse was two-fold: first, the removal of the phone from child's desk in his bedroom after Father's repeated entreaties to go to bed; second, Father's physical interaction with child when Father held child's phone over his head and child jumped up and down, trying to retrieve it. Father had no physical interaction with child when he removed the phone from the child's desk, while he clearly had some physical interaction with child while child was jumping up and down. Child testified that Father pushed his arm away while Father testified that he remained unsure how child was bruised. N.T., 2/23/23 at 51, 281.

However, Mother's argument that any abuse occurred in the bedroom simply is not supported by the record. Father had no physical contact with child. The record is devoid of any evidence that Father uttered any threat to hurt child in the bedroom. He merely kept reminding child to terminate the phone call and go to bed, exercising appropriate parental authority.

However, Mother persists in arguing that Father somehow committed abuse in the bedroom. That position appears contrary to common sense and the law on several grounds. First, she argues that a parent has no right to enforce a reasonable bedtime, particularly on a school night. Second, she argues that a parent has no right to remove a cell phone from a ten year old child who persists in speaking on the phone after several requests to terminate his phone call and go to bed. Tellingly, Mother testified that she echoed Father's request to go to bed on the phone, corroborating the reasonable nature of Father's requests. *Id.* at 145. For these reasons, Appellant's argument on this basis must fail.

73

Turning to the second part of the December 19th incident, the record shows that child initiated physical contact with Father, trying to wrest the phone from Father's grasp. The court credited child's testimony that he must have been bruised when Father pushed child's arm away. However, Mother mischaracterizes the court's ruling by claiming that the court dismissed the existence of these "red marks." Nothing could be further from the truth. Indeed, the etiology of this bruise is the very gravamen of Appellant's case which the court took very seriously.

However, after considering the entire record, particularly Father's and child's testimonies and admitted evidence, the court determined that Appellant had not met her burden pursuant to §§ 6102(a)(1), (2) and (5).

As a result, the court determined that Appellant had failed to establish abuse pursuant to the PFA Act by a preponderance of the evidence and declined to issue a protective order. The trial court respectfully requests that its decision be affirmed.

### 44. Appellant's Forty-Fourth Issue Mirrors Her Third Issue and Therefore Should Be Deemed Waived.

In Appellant's forty-fourth issue, she contends:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse under 23 Pa.C.S.A. 6102(a)(1) relating to attempting to cause or or intentionally, knowingly or recklessly causing bodily injury or , serious bodily injury.

The trial court addresses this issue in Appellant's third issue raised. *See* above at pp. 22-24. As a result, this issue should be deemed waived. *See* Pa.R.A.P. 1925(b)(4)(iv).

### 45. Appellant's Forty-Fifth Issue Mirrors Her Fourth Matter and Therefore Should Be Deemed Waived.

In Appellant's forty-fifth issue, she states:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse under 23 Pa.C.S.A. 6102(a)(2) relating to placing another in reasonable fear of imminent serious bodily injury.

The trial court addresses this issue in Appellant's fourth issue. *See* above at pp. 24-27. As a result, this issue should be deemed waived. *See* Pa. R.A.P. 1925(b)(4)(iv).

> **46. Appellant's Forty-Sixth Issue Mirrors Her Fifth Matter and Therefore Should Be Deemed Waived.**

In Appellant's forty-sixth issue, she alleges:

The Trial Court committed an error of law and/or an abuse of discretion in failing to make a finding of abuse under 23 Pa.C.S.A. 6102(a)(5) relating to Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.

The trial court addresses this issue in Appellant's fifth issue. *See* above at pp. 27-29. As a result, this issue should be deemed waived. *See* Pa.R.A.P. 1925(b)(4)(iv).

## CONCLUSION

For the foregoing reasons, the trial court's Order to Dismiss Petition of March 1, 2023 and its Additional Findings to Denial of Final Protection from Abuse Order should be affirmed.

**BY THE COURT:**

*Stephanie H. Klein*

**STEPHANIE H. KLEIN, J.**

75